## Henning, etc., Appellant, *v*: McKeown.

*Statute of frauds—Guaranteeing—Agreement to pay debt of another—Primary liability.*

In an action for goods sold and delivered, the case is for the jury, when the evidence of the plaintiff is that the goods were ordered by and directed to be charged directly to the defendant.

In such case the defense that the defendant was a guarantor, and that the agreement was unenforceable because it was not in writing, as required by the statute of frauds will not be sustained, in the face of the evidence to the contrary.

Argued April 21, 1926.   Appeal No. 74, April T., 1926, by plaintiff, from judgment of C. P. Cambria County, March T., 1924, No. 456, in the case of Ludwig H. Henning, etc., v. Charles A. McKeown.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Reversed.

Assumpsit for goods sold and delivered.   Before REED, P. J. O. C., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $857.02.   Subsequently the court, on motion, entered judgment in favor of defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned,* among others, was in entering judgment in favor of defendant.

*J. Earl Ogle, Jr.,* for appellant.

*Frank P. Barnhart,* for appellee.

OPINION BY HENDERSON, J., July 8, 1926:

The plaintiff recovered a verdict against the defendant for certain engraved cuts for use in printing and for work and material furnished in making the cuts.

Subsequently the defendant entered a rule for judgment n. o. v. which, after argument, was made absolute. This action of the court was based on the conclusion that, under the plaintiff's testimony, the defendant was a guarantor of the debt of another person who was primarily liable and that therefore the agreement was unenforceable under the statute of frauds; it not being in writing. A careful examination of the evidence brings us to the conclusion that the result arrived at is not sustainable. The testimony of the plaintiff is sufficiently clear in parts to show an express undertaking on the part of the defendant to compensate him for the work done and to show that the defendant was primarily liable. The account was entered against him in the plaintiff's book of original entries and there is evidence that this was done, certainly as relates to all of the bill except $23.35, on the agreement of the defendant with the plaintiff that he would pay the bill. It is in evidence that "the big order," amounting to more than $800, was brought in by Mr. McKeown himself, and when the plaintiff raised the question with the latter as to payment, he, the defendant, said that it was to be charged to himself, and it appears that the plates and engravings, after they were finished, were delivered to him. The defendant's assumption of responsibility for the work, before it was done, appears in different places in the plaintiff's testimony during the repeated direct and cross-examinations, and his testimony is supported by the evidence of the bookkeeper of the plaintiff who testified that when Mr. McKeown came into the office of the plaintiff in July, 1921, when the order for the amount of $833.60 was made up, that the latter said, in response to the inquiry against whom the bill for the work was to be charged, he would pay Mr. Henning for the work, and that it should be charged to him, the defendant. The same

witness testified that when Mr. McKeown was in the office and was going over the work with the plaintiff, the former said that he would pay the bill to Mr. Henning if he would take care of it. It is not questioned that the defendant was interested in the production of the cuts and that he conferred with the plaintiff in regard to them from time to time. A misapprehension seems to have arisen in regard to the testimony of the plaintiff owing to the fact that some small items in the account, beginning April 7, 1921, and ending May 17 of the same year, amounting to $23.35, were for some work brought to the office by a man named Gard; the latter saying at the time that the charge was to be made against the defendant. The plaintiff testified on cross-examination that his understanding was that Mr. McKeown was having the work done for himself and that he accepted that work for himself directly, and that when questioned he said it was all right. This inquiry was made in the very beginning with Mr. Gard. The witness further explained that this was just a small part of the work, but that when it developed into the kind of a job it was, he made sure that somebody was going to be responsible for the bill, and that Mr. McKeown assured him that it would be taken care of, the Valley Engraving Company or himself would be taken care of, because it was a long drawn out job. The defendant's counsel then propounded the question, "You mean Mr. McKeown said he would guarantee the payment by Mr. Gard?" and the witness answered, "That is the impression I got." But we think it clear from the subsequent testimony of the witness that he did not intend to be understood as accepting the technical meaning of the word guarantee in the question propounded to him by the defendant's counsel. He later in the examination testified directly that he raised the question with Mr. McKeown himself as to who was liable for the account and Mr. McKeown told him it

was to be charged to him. The words "guarantee" and "be responsible for" are frequently used in business negotiations as applied to a primary obligation and there is nothing in the plaintiff's reply to the inquiries of the defendant's counsel when all his testimony is considered to require the conclusion that he intended to be understood as stating his indebtedness was against some other person and that the defendant had merely become a surety therefor. An examination of the testimony of the witness satisfies us that such is not the effect of the whole of his evidence. It certainly is not so clearly or directly to that effect or so contradictory that the character of the contract should be determined by the court rather than by the jury. The case principally relied on by the learned judge is Bunting v. Goldstein, 283 Pa. 356. It will be seen however in that case that it did not appear from the testimony of the defendant who had brought the prosecution against the plaintiff, nor from any other witness, that H. S. Goldstein, the other defendant, had authorized the arrest of the plaintiff, or that he had any knowledge of it until after the arrest had taken place. As the proceeding for trespass was against two, it was of course incumbent on the plaintiff to show that each of the parties had participated in the apprehension of the plaintiff who was wrongfully accused; there being a failure to connect H. S. Goldstein with the case, he was entitled to a summary judgment in his favor. In the repeated narration of occurrences and conversations, it is not uncommon for a witness to use somewhat confused and inconsistent statements, but the testimony is to be considered as a whole, and it is the province of the jury to settle any doubt arising therefrom: Kohler v. Penna. R. R. Co., 135 Pa. 346. If the testimony of the plaintiff were doubtful, the evidence of the bookkeeper would carry the case to the jury; for that is certainly clear and di-

rect as to all of the account except the small items above referred to, and the verdict of the jury has established the validity of the claim under a charge fairly presenting the question at issue.

The assignments are sustained. The judgment is reversed and the record remitted with direction to enter judgment in favor of the plaintiff on the verdict.