## Kensington Bank *versus* Patton.

1. To take a case out of the operation of the statute of limitations, the acknowledgment must contain an unqualified and direct admission of a previous debt, which the party is willing to pay.

2. It must be a promise to pay on demand; an immediate unqualified promise to pay, without restriction or conditions.   Per ROGERS, J.

ERROR to the District Court of *Philadelphia.*

This was a suit brought by the Kensington Bank against Robert Patton.

On the 11th January, A. D. 1841, the defendant made his promissory note for $100, payable at ninety days, to the order of John Telford, who endorsed it to the plaintiff; the note was payable on the 14th day of April, 1841; and on the 28th day of April, 1847, *or six years and seventeen days* after the right of action commenceu the suit was brought.

[Kensington Bank *v.* Patton.]

At first the plaintiff, declared in the common form against the defendant as maker of the note, and also upon the common counts: to which the defendant pleaded (*inter alia*) non-assumpsit *infra sex annos*, and *actio non accrevit infra sex annos*. On these pleadings the cause was tried, and on the evidence hereafter set out, the plaintiff obtained a verdict, which the court set aside. Before the next trial, the plaintiffs obtained a rule to show cause why they should not have leave to file special counts, but the court refused to permit them to be filed. On the next trial below, the same offer was made, and again rejected; and on the plaintiff's evidence having been given, the judge directed a non-suit.

Evidence on part of plaintiff was given, as follows :

" I am a clerk in the Kensington Bank. I called on Patton (the defendant), April 14th, 1847, with this note. He said he would come up to the bank in the course of a few days, and make some arrangements to pay the note."

And being cross-examined by defendant's counsel, the witness said : " I went to Patton, and said there was a note of his at the Kensington Bank for $100, which had been lying unpaid, and I had been sent to have some arrangement made respecting the payment of it. He said he would call up at the bank, in course of a few days and make some arrangement respecting the payment of it. He said he might pay it, or could pay it, in the course of a year. I asked defendant to call at my house to meet the cashier. He wrought at day's work, and I told him the bank did not care about his losing time. I don't remember whether he said he would go to my house, or not. I don't know if I offered to take a new note. I, had no instructions to do so. Something was said by me of taking five dollars at a time. I told him the bank would take it in any sums he chose. I do not remember whether defendant declined that, or not."

It was assigned for error, that the judge erred in entering a non-suit.

The case was argued by *J. Johnston,* for plaintiff in error, with whom was *St. Geo. T. Campbell.*—It was contended that the evidence was sufficient that the defendant acknowledged and promised to pay the debt : 9 *Barr* 258 ; 3 *Ser. & R.* 211 ; 7 *id.* 116 ; 2 *Gale & Davison,* 593 (in 1842); 15 *Vermont* 560, Chapin *v.* Warden (in 1843); 4 *Denio,* Stilwell *v.* Cooper ; 8 *Wend.* 600 ; 3 *Whar.* 81 ; *Best on Ev.* 40 ; 6 *Miss.* 21 ; *R. M. Charlton's Rep.* 8 ; 13 *E. C. L.* 85 ; 16 *Vermont* 193 ; *id.* 297.

*Hood,* for defendant.—1 *Brown's Rep.* 123, Bell *v.* McCall ; 9 *Con. Rep.* 496 ; 4 *Barr* 322–3 ; 9 *Watts* 380 ; 10 *id.* 172 ; 6 *id.* 220 ; 15 *Maine Rep.* 360, Oakes *v.* Mitchell. In 1 *Pet.* 351, it was

[Kensington Bank *v.* Patton.]

held that plaintiff must show himself entitled to recover on the terms of the new promise. Also cited 6 *B. & C.* 549; 14 *Mees. & Wels.* 741, Hart *v.* Prendergast (1845). The *onus* lies on plaintiff: 4 *C. & P.* 173; 5 *J. J. Marshall*, 255; *Joynes on Stat. of Lim.* 98.

The opinion of the court was delivered by

ROGERS, J.—Was this a case to be tested exclusively by the earlier decisions, sufficient appears in the evidence to take it out of the operation of the act of limitations. This is conceded; but the later cases have adopted more stringent rules, and have *nearly* restored the construction of the act to what it ought originally to have been. Being a statute of repose, it deserved encouragement, a benign interpretation, instead of rebuke, censure, and discountenance, carried to such an extent as almost to amount to a repeal of the act itself. Nor do I think that the law will be put upon a proper footing, until some legislative action is had, some enactment, similar to the British statute, is introduced into our system, requiring the acknowledgment and promise to pay, to be *in writing*. The inquiry now is, how does the case stand on the modern decisions, some of which only is it my intention to notice. In Bell *v.* Morrison, *Peters* 351, it was held, that plaintiff must show himself entitled to recover on the terms of the new promise; and if any conditions were annexed, they ought to be shown to have been performed. The acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. Expressions ·equivocal, vague, and indeterminate, will not suffice. The statute was designed to guard against persons being entrapped in careless conversations and betrayed by perjuries. The promise to pay must not be vague, shadowy, and uncertain; it must be plain, unambiguous, and express, and such as to preclude hesitation and doubt: Allison *v.* James, 9 *Watts* 380; Gilkyson *v.* Larue, 6 *W. & Ser.* 213; Morgan *v.* Walton, 4 *Barr* 322; Berghaus *v.* Calhoun, 6 *Watts* 219. In Morgan *v.* Walton, the words were, I owe your father, but tell him, I cannot pay him this fall, not before next spring; but next spring, I intend to settle with your father and pay him what I owe him, or pay him his account. Held, not to take the case out of the act. Although there was an acknowledgment of the debt, yet it was qualified by what took place at the time.

The words on which plaintiff relies are, that defendant said to an agent of theirs, that he would come up to the bank, in the course of a few days, and make some arrangement to pay the note. The witness, who was a clerk in the bank, says he went to Patton, the defendant, and said there was a note of his for $100, which had been lying unpaid, and that he had been sent to have some arrangement made respecting the payment of it. The defendant said he would call up at the bank, in the course of a few days, and

make some arrangement respecting the payment of it. He said he might pay it, or could pay it, in the course of a year. Something was said by witness, of taking five dollars at a time. Witness told him that the bank would take it in any sums he chose. Does not remember whether defendant declined that, or not. That this may be considered as the acknowledgment of a debt, may be conceded; but is it consistent with a promise to pay? The witness says, he would call up and make some arrangement to pay the debt. In Oakes *v.* Mitchell, 15 *Maine Rep.* 360, the words were, an arrangement will soon be made to pay the note. I calculate to pay it, and I always calculated to pay it. This was held not sufficient to take the case out of the act of limitations. That case is very like the present. It is also ruled in England, that the acknowledgment must be such as plainly to imply a promise to pay, on request or demand, because the promise in the declaration is to pay when thereto requested; or, in other words, on demand. Here, if we take the whole conversation together, it was a promise to pay in the course of a year. Thus, in addition to Oakes *v.* Mitchell, and the other cases cited, which decide this case, in Tanner *v.* Smart, 6 *B. & C.* 549, Lord TENTERDEN. declared, that the acknowledgment must be positive, distinct, and unqualified, and such as to maintain the promises in the declaration, viz. to pay on demand. The acknowledgment and promise, in that case, were, "I cannot pay the debt at present, but I will pay it, as soon as I can." This rule is approved in Hart *v.* Prendergast, 14 *Mees. & Wels.* 741, by POLLOCK, C. J., and Barons PARKE, ALDERSON, and ROLFE. In Hart *v.* Prendergast, this latter was held insufficient. I will not fail to meet Mr. H., "the plaintiff, on fair terms, and have now a hope that before perhaps a week from this date, I shall have it in my power to pay him, at all events a portion of the debt, when we shall settle about the liquidation of the balance." In that case, there is an acknowledgment of the debt, which, unqualified, would be sufficient; but, inasmuch as it appears he was unwilling to pay except on terms, it failed to take the case out of the operation of the act. So here, although there is an acknowledgment of the debt, yet it is accompanied by evidence that he was unwilling to pay, except in the course of twelve months. He said he might pay, or could pay it, in the course of a year. He said he would call at the bank, in the course of a few days, and make some arrangement respecting the payment of it. It also appears, that to a proposition to pay five dollars at a time, no response was made by the defendant: at least none is recollected. It is very true, that from an unqualified acknowledgment of the debt, a promise to pay may be inferred; but this presumption may be rebutted by other parts of the conversation, which show that it is not the intention of the defendant to bind himself to pay the debt on demand. In Tanner *v.* Smart, it is true, the words being,

[Kensington Bank *v.* Patton.]

" I cannot pay the debt at present, but I will pay it as soon as I can," an intimation is given that if there had been proof of the defendant's ability to pay, the court would have held it sufficient to take it out of the act.  That, however, is not the point of the decision, the principle ruled.  (I speak for myself alone :)  What I take to be the true principle is, that it must be a promise to pay on demand; an immediate, unqualified promise to pay, without restriction or conditions.  This construction, I think, policy demands for the security of the unfortunate debtor.   Experience shows (and this is a case of that description) that, as soon as an insolvent debtor is beginning to retrieve his affairs, traps are set, and persons employed to betray him into unguarded expressions, which are immediately laid hold of as the foundation of a suit.  Hence it is that we have so many cases on our docket, of this class.  And this will ever be the case, when a state of prosperity succeeds a state of extreme depression and adversity; which latter is unfortunately too often the case among our active, enterprising, and untiring countrymen.   A strict interpretation of the act, in my judgment, is better for both creditors and debtors, more particularly in this country, where the creditor of to-day may become the debtor to-morrow.   And, although this point, as to construction, is not expressly ruled; yet it comes within the spirit of decisions in this State.   Although intimations have been thrown out by judges, from time to time, yet the contrary has not been expressly decided.                                          Judgment affirmed.