# M. KEENER, ADMR., v. D. ZARTMAN, ADMR.

**APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.**

Argued May 19, 1891—Decided October 5, 1891.

1. In an action by an administrator against an administrator, to recover an indebtedness barred by the statute of limitations, admissions of the debtor, made more than six years before the suit was brought, are inadmissible to establish an acknowledgment and promise to pay, as a basis of a right to recover notwithstanding the statute.

2. A statement by a debtor to his creditor, within the six years, that "he knew that he owed him, and that he will see that he will pay it; that the boys (the debtor's sons) had got the best farms, and they must pay it," is not such an acknowledgment, implying an unequivocal promise to pay, as is sufficient to toll the bar of the statute.

3. A son and heir at law of the plaintiff's intestate, interested in the settlement of the estate, is a competent witness on behalf of the plaintiff to prove that a book produced was one of his father's books of original entry, and that certain accounts therein charged to the defendant's intestate, are in the handwriting of the father.

4. An account of a year's farming by the plaintiff's intestate, made up the year thereafter and entered on a blank page of an old copy-book containing no other accounts, and signed, as alleged, by the defendant's intestate in his own handwriting, is not such a book entry as is admissible on the part of the defendant, as evidence of a set-off or payment.

(a) The debt claimed in the action, if it existed at all, was subsisting at the time the defendant's intestate conveyed a farm to one of his sons without valuable consideration. The son, called as a witness for defendant, executed an assignment of all his interest in his father's estate, real, personal, and mixed, but still owned the farm so conveyed:

5. If, as was alleged, there was no personalty of the defendant estate, the land could be followed for the claim sued for, if recoverable. The son would therefore be interested in the suit adversely to the plaintiff's

intestate, and would remain incompetent as a witness for defendant, under § 5 (e), and § 6, act of May 23, 1887, P. L. 158, notwithstanding the assignment.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 97 July Term 1890, Sup. Ct.; court below, No. 58 June Term 1887, C. P.

On June 7, 1887, Monroe Keener, administrator of the estate of Emanuel Keener, deceased, brought assumpsit against David Zartman, administrator of the estate of David Zartman, deceased. The plaintiff's statement of claim was not printed in the paper-books. The defendant pleaded, non-assumpsit, non-assumpsit infra sex annos, payment, and set-off.

At the trial, on April 30, 1890, the plaintiff called Jacob S. Keener, to prove books of original entry. On his voir dire, the witness testified that he was a son of Emanuel Keener, the plaintiff's intestate. Objection was made to the competency of the witness.

By the court: Objection overruled, offer admitted; exception.[1]

The witness testified that certain accounts in a book produced were in his father's handwriting.

John D. Matthews, called for the plaintiff, testified that in 1880, David Zartman, now deceased, called upon him with reference to conveying his farms to his sons:

" Q. Now state what conversation took place between you and the old man." Objected to.

By the court: Question allowed; exception.[2] You may state, if you can do it, that you will follow it up by proving an admission and promise to pay within six years.

The plaintiff's counsel stated that he proposed to follow by proving an admission and promise to pay within six years from the bringing of the suit. The defendant's counsel objected to the proof of any conversation that occurred with his intestate more than six years prior to the time suit was brought.

The offer being admitted, the witness testified, in substance, that in the year 1880 David Zartman called upon the witness, who was a justice of the peace, to see whether he could convey a farm to each of his sons; " he had four farms, he said; I told

him I thought he could do so, provided he had no debts; he would have to pay his debts, what he had."

Mr. Steinmetz: I object to anything that the witness told Mr. Keener [Zartman] at that time.

By the court: Objection overruled; offer admitted; exception.[2]

"A. He said that I knew all the debts that he had; he owed me a few hundred dollars, and Lewis Fetter a few hundred dollars; and he owed Manny Keener for work on the farm in the neighborhood of $300; that was the conversation we had." The witness testified, further, that the conveyances were made in March, 1880, and that Zartman paid Fetter in his presence; that Zartman also met Keener at witness's office: "They admitted then that the debt was in the neighborhood of $300. How much it was they couldn't say unless they had the books, and they hadn't the books then; but they agreed that the deeds should be given, and Zartman would settle with Keener and satisfy the debt some day."

John Pannebecker, called for the plaintiff, testified that in the spring of 1882 he was working as a hired man for Emanuel Keener, then living on a farm of David Zartman, and heard a talk between Keener and Zartman about a debt:

"Emanuel Keener asked him to pay him for his debt about hauling lumber and boarding the men, and for the building of the barn and the house, and Mr. Zartman said that he knew he owed him, and that he will see that he will pay it; that the boys, Davy and Pete, had got the best farms, and they must pay it."

By the court: "You stated first that he said he would pay it. Now you say he said that his sons had the two farms, and he would make them pay it."

"Q. Was anything said about how much the debt was? A. Mr. Keener said it was about $300."

By the court: "Did Mr. Zartman admit that? A. Yes, sir."

"Q. Where was this talk had? A. Between the house and the barn, about ten steps from either place. Q. Out in the yard? A. Yes, sir. Q. And this was in 1882? A. Yes, sir. Q. That was the year you were living there? A. Yes, sir. Q. Who else was present when this conversation took place? A. Monroe Keener and his sister, and, I guess, the old woman;

I don't know that for sure, Mr. Keener's wife.  Q. Did you hear any other conversation about this between them?  A. No. Q. Did old Mr. Zartman ask Mr. Keener how much the debt was?  A. Yes, sir.  Q. And what did Keener say?  A. Well, about $300 he said.  Q. What did the old man then say? A. The old man then said that he knows that he owes him that, and he wants to see that he will get his pay from the two boys; David and Peter have got the best farms, and they must pay it."

After other testimony, the plaintiff gave the accounts proved in evidence.  These accounts were not shown in the testimony as printed, but it was stated in the appellant's paperbook that the claim was for boarding furnished, and wages paid to carpenters and masons who built a house on one of the Zartman farms in 1864 and repaired a barn in 1873; and that David Zartman died on November 27, 1885, and Emanuel Keener on March 31, 1887.

In the defendant's case, Peter Zartman, a son of David Zartman, deceased, was called and, under objection by the plaintiff, testified that on April 30, 1890, he had executed to David Zartman the following assignment:

"Know all men by these presents that I, Peter Zartman, of Lincoln, Lancaster county, Pa., for value received have bargained, sold, assigned, transferred and set over unto David Zartman, all my right, title, interest and demand in, to or out of the estate of David Zartman, late of Elizabeth township, Lancaster county, Pa., deceased, giving him authority to collect and receive the same unto himself, be the same in real, personal or mixed estate of any kind whatsoever of said David Zartman, deceased, to which I now have claim, right, title or interest.

"Witness my hand and seal this 30th day of April, A. D. 1890.                     PETER ZARTMAN, [SEAL.]"

The defendant then offered the assignment in evidence. Objected to.

By the court: Offer refused; exception.[5]

The defendant then offered to prove by the witness an entry on a blank page of an old copy-book, containing no other accounts, "as an original entry kept in a book of David Zartman, now deceased."  The entry was as follows:

Charge of Court below.

" Brickerville, Lancaster county, Pa., April 2, 1880 : a statement made according to the farming of Emanuel Keener, on the farm then belonging to David Zartman, deceased.

| | |
|---|---:|
| 148 bu. of wheat at $1.10 per bu. . . . | $162.80 |
| 115 bu. of corn at 55c. per bu. . . . | 118.25 |
| 15 bu. of rye at 75c. per bu. . . . . | 11.62 |
| 149 bu. of oats at 49c. per bu. . . . | 58.11 |
| | $350.78 |

" The above is a correct statement with the last year's farming of Emanuel Keener on David Zartman's farm, and kept the $350.78 as a claim against the said David Zartman.

"PETER ZARTMAN, [SEAL.] DAVID ZARTMAN."
Objected to.

By the court: The offer is not an original entry ; and witness holds a deed for a farm from his father executed in March, 1880, for a merely nominal sum, a gift from his father. We therefore overrule the offer ; exception.[3]

By Mr. Steinmetz : It is proposed further to prove by this witness that he settled with Emanuel Keener for his father a few days before April 2, 1880, in which settlement Emanuel Keener gave him a report or account of 148 bushels of wheat at $1.10 per bushel, 115 bushels of corn at 55 cents per bushel, 15 bushels of rye at 75 cents per bushel, 149 bushels of oats at 49 cents per bushel, as his father's share of the year's crops on the farm for the years immediately preceding April 1, 1880, which amount Emanuel Keener owed David Zartman and which he kept against the claim that David Zartman owed him ; that his father, David Zartman, had this made into an original entry and signed it, as appears under date of April 2, 1880, in the book produced, a copy of which account has already been offered to the court. Objected to.

By the court: Objection sustained, offer refused on account of the incompetency of the witness ; exception.[4]

The case being closed on the evidence, the court, PATTERSON, J.. charged the jury in part as follows :

Now, it is true that when a claim commences to run, if six years has run from that time before the suit is brought, it cannot be recovered, unless the party owing the debt revives it by

a promise to pay.   If the parties meet and have a conversation about a debt which is owing, and the original debtor,—here David Zartman,—within the six years promises to pay it, it revives it for another six years, and it can be recovered.   Now, it is true, as has been argued before you, that that promise to pay must be made to the creditor, or to an authorized agent of the creditor.   [In two instances, however, under the testimony, you will find that the promise by David Zartman in his lifetime was made to the actual creditor, and therefore we need not go further into that subject.] [6] . . . . .

Now, what is the testimony in regard to the promise to pay, to take this claim out of the operation of the statue of limitations?   Because, you see that some of it was contracted for in 1864, and more than six years has run from that time to the time of bringing the suit; and therefore, it would be cut out by the statue of limitations.   The testimony must satisfy you that David Zartman, the defendant, did promise to pay it after that six years was up.   [The first witness is John D. Matthews, Esq., a gentleman who has been a justice of the peace, and who knows something about the law in that kind of matters, of course. Now, his testimony is that the defendant, David Zartman, in the course of a conversation between David Zartman and Emanuel Keener in 1880, did reply, after an admission that the debt was owing, that he would pay it; therefore, you must take all his testimony together.   In that same conversation Mr. Zartman, who is now deceased, admitted that they would settle it, and he would pay it, *he* would pay it.   *I* would pay it.   And they both admitted, that is Mr. Zartman as well as Emanuel Keener, that the claim or debt was over three hundred dollars.   That was in 1880 that they had this conversation.] [6]   Now Mr. Pannebecker's testimony was in relation to a conversation had between David Zartman and Emanuel Keener in 1882, when Mr. Keener said that it was about or over three hundred dollars, and Mr. Zartman said it was at least three hundred dollars. Mr. Zartman asked Mr. Keener on that occasion, according to the testimony of John Pannebecker, " How much is it?"   Mr. Keener said it was about three hundred dollars.   Mr. Zartman said he would pay it.   At first he said he would pay it.   Then he said his two sons had got the best farms, and he would make them pay it, after saying he would pay it himself.   Now that

was in 1882, less than six years previous to the bringing of this suit. This suit was brought on June 7, 1887. So, that that would make it less than six years before the suit was brought, that this conversation was had and this promise to pay was made on the part of David Zartman. . . . .

The court is requested by the defendant to charge the jury:

3. If the jury believe the following testimony of John Pannebecker, it is insufficient to remove the bar of the statue of limitations, and the verdict must be in favor of the defendant: [The matter here quoted was but an abbreviated form of the testimony of the witness in chief, given ante, 181.]

Answer: We say, yes, to that; according to the proposition here, according to that quotation from John Pannebecker's testimony, we say, yes; but that is not all of the testimony of Mr. Pannebecker.[7]

4. In order to take this case out of the operation of the statute of limitations, the acknowledgment of the alleged debt must be clear, express, and unequivocal, and so distinct and palpable in its extent and form as to preclude hesitation.

Answer: We say, yes, to that. The acknowledgment of the debt must be clear, express, and unequivocal, and so distinct and palpable in its extent and form as to preclude hesitation. Therefore, you must be satisfied that this debt is three hundred dollars or more, according to the testimony, and that it has not been paid, and that the evidence is so clear that it will preclude your minds from any hesitation about it but that David Zartman in his lifetime renewed the debt, or promised to pay it; that is made clear by the testimony of John Pannebecker, Squire Matthews and others. Your minds ought to be directed to the testimony, to satisfy yourselves. Now, you must look at the testimony, and take the law which we have submitted to you, and find a verdict which will satisfy your own conscience and do justice to the parties.[7]

—The jury returned a verdict for the plaintiff for $444. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal and assigned for error:

1, 2. The admission of the plaintiff's offers.[1] [2]

3–5. The refusal of the defendant's offers.[3 to 5]

6. The portions of the charge embraced in [  ] [6]

7. The answers to the defendant's points.[7]

Opinion of the Court.

*Mr. John E. Malone* (with him *Mr. J. L. Steinmetz*), for the appellant.

Upon the first assigment, counsel cited: § 5 (*e*), act of May 23, 1887, P. L. 158. Upon the fourth and fifth assignments: Dellone v. Rehmer, 4 W. 9; Steininger v. Hoch, 42 Pa. 432; Forrester v. Torrence, 64 Pa. 31; Heft v. Ogle, 127 Pa. 244.

*Mr. D. McMullen*, for the appellee.

Counsel cited: (1) 1 Greenl. Ev., § 348; 1 Whart. Ev., § 688; Van Swearingen v. Harris, 1 W. & S. 356; Odell v. Culbert, 9 W. & S. 66; Hoover v. Gehr, 62 Pa. 136; Dodge v. Morse, 3 N. H. 232. (2) Trickett on Lim., 349, 350. (3) Funk v. Ely, 45 Pa. 444; Churchman v. Smith, 6 Wh. 146; Curren v. Crawford, 4 S. & R. 3; 1 Whart. Ev., § 681; Shoemaker v. Kellog, 11 Pa. 310; Stuckslager v. Neel, 123 Pa. 53; Hess's App., 112 Pa. 168. (6, 7) Trickett on Lim., §§ 230, 231; Watson v. Stem, 76 Pa. 121; McClelland v. West, 70 Pa. 183; Hazlebacker v. Reeves, 9 Pa. 258.

OPINION, MR. JUSTICE GREEN:

The claim of the plaintiff in this case is exceedingly old and stale. It is founded upon an allegation that money was paid by the plaintiff's intestate for the defendant's intestate, for wages owing by the latter, and that boarding was furnished to the men who did the work, as far back as the year 1864, which was twenty-three years before the present action was brought. A further claim of the same character, in the year 1873, is included, and that was fourteen years prior to the suit. We know nothing of the items of these claims, as neither the appellant nor the appellee has printed the book entries which are the foundation of the action. But it is a fact not disputed that, during all the period of the account, the plaintiff's intestate was the tenant of the defendant's intestate, having the means of satisfaction in his hands every year, by applying the landlord's share of the grain to the extinguishment of the debt. It seems incredible that such extraordinary laches should transpire between men so situated, especially as the plaintiff's intestate was a tenant only, and his debtor was his landlord who was the owner of a large amount of real estate. No action was brought in the lifetime of either party, though three years

elapsed before the death of either, after the promise set up to bar the statute was alleged to have been made. It needs hardly to be said that in such highly exceptional circumstances the evidence in support of the alleged acknowledgment and promise should be of the most satisfactory character.

Upon reading the testimony we find that there was but one witness who gave any evidence as to any declarations of the defendant's intestate made within six years prior to the commencement of the action. His name is John Pannebecker, and the whole of his testimony on this subject is as follows:

" Q. Did you hear any talk between him (David Zartman) and Emanuel Keener? A. Yes, sir. Q. About a debt? A. Yes, sir. Q. State what it was? Tell us what was said between them? A. Emanuel Keener asked him to pay for his debt about hauling lumber and boarding the men, and for the building of the barn and the house; and Mr. Zartman said that he knew that he owed him, and that he will see that he will pay it; that the boys, Davy and Pete, had got the best farms, and.they must pay it. . . . . Q. What, then, did the old man say? A. The old man then said that he knows that he owes him, and that he wants to see that he will get his pay from the two boys; David and Peter have got the best farms, and they must pay it."

This is the whole of the testimony of the witness upon the direct question as to what was actually said by David Zartman, deceased.

It is a perfectly familiar and well-settled principle in the law of this state that, in order to take a debt out of the statute, an acknowledgment must be clear, distinct, and unequivocal, and it must be consistent with a promise to pay: Palmer v. Gillespie, 95 Pa. 340; Wesner v. Stein, 97 Pa. 322; Lawson v. McCartney, 104 Pa. 356; Shaeffer v. Hoffman, 113 Pa. 1. In Palmer v. Gillespie we said: " A clear, distinct, and unequivocal acknowledgment of a debt is sufficient to take a case out of the statute. It must be an admission consistent with a promise to pay. . . . . There must not be uncertainty as to the particular debt to which the admission applies. It must be so distinct as to remove hesitation as to the debtor's meaning." The same language was repeated in Wesner v. Stein. In Lawson v. McCartney, the defendant himself testified that he had

Opinion of the Court.

said to the plaintiff: " I wished I could pay him all I owed him.
. . . . . In the first conversation he wanted me to promise to
pay him. He may have thought I would. I said I was sorry
I could not pay him all I owed him. I admitted I owed it.
. . . . . I told him if he would let this go on I would do the
best I could to pay him. . . . . He did not show me the note.
I knew it. I never disputed it." On the question whether
these admissions were sufficient to toll the statute, we said,
MERCUR, C. J. : " We think they are not. When a claim to
recover a debt barred by the statute rests on the admission of
the indebtedness, the acknowledgment thereof must be unqual-
ified. It must be consistent with a promise to pay on demand.
It must not be accompanied by such other expressions as indicate
a willingness to pay at some future time : Kensington Bank v.
Patton, 14 Pa. 479. No implication less than this will toll the
statute. The language should be so clear as to preclude hesi-
tation as to the debtor's meaning." In Montgomery v. Cunning-
ham, 104 Pa. 349, we said: " The acknowledgment must be
clear, distinct, and unequivocal. It must be such that a prom-
ise is clearly implied." In this case a part of the defendant's
declaration was, " He said he would pay me, and make it all
right." In Shaeffer v. Hoffman, 113 Pa. 1, the debtor, ac-
knowledging the execution of the note, saying : " It must be
fixed. I and W. will have to pay it," was held not to be such
an acknowledgment of the debt as implies a promise that he
will pay it, and does not, therefore, toll the statute. Mr. Jus-
tice PAXSON, in delivering the opinion, said: " It is not such
an acknowledgment of the debt from which an unequivocal
promise to pay can be inferred. It does not prove an express
promise nor an implied one. . . . . The expressions that it
must be ' fixed ' and that he ' and William would have to pay
it,' are equivocal. In the one instance it is not the equivalent
of ' pay ; ' in the other, it involves another person, and may
refer to a supposed liability, rather than an intention to pay.
. . . . . A statement by the defendant that he and some one
else would have to fix a note, or would have to pay it, contains
nothing from which an implied promise that the defendant
alone would pay [follows ?]."

If we recur to the testimony in the present case, we find
nothing from which it can be implied that David Zartman

alone intended to pay the debt.   The witness said that " Mr.
Zartman said that he knew that he owed him, and that he will
see that he will pay it; that the boys, Davy and Pete, had got
the best farms, and they must pay it."   And the same witness,
repeating the same conversation, said: " The old man then
said that he knows that he owes him that, and he wants to see
that he will get his pay from the two boys; David and Peter
have got the best farms, and they must pay it."   The only
thing that is unequivocal, in reality, in all this, is that the old
man intended that the two boys should pay the debt.   It can-
not be said of this testimony that it contained a clear, distinct,
and unequivocal acknowledgment of the debt, consistent with
a promise that he, David Zartman, alone, would pay or intended
to pay the debt at any time.   On the contrary, such an infer-
ence is precluded by his saying that the boys must pay it, or
that he would see that they would pay it.   Of course, the lan-
guage is highly equivocal as to any intent of his to pay the
debt himself.   We are of opinion that the testimony of the
witness was entirely insufficient to toll the statute, and there-
fore sustain the seventh assignment.

The sixth assignment is sustained, and also the second, be-
cause the conversation testified to by the witness Matthews
occurred in the year 1880, which was more than six years be-
fore suit brought.   It should not have been admitted, and,
having been received in evidence, it was entitled to no consid-
eration, as the basis of a right to recover.

The first assignment is not sustained, as the witness, though
a party, and interested, was only examined to prove book en-
tries, and for that purpose he was competent.

The third assignment is not sustained, because the entry in
David Zartman's book was not such a book entry as could be
given in evidence.

We think the witness Peter Zartman was not competent to
testify for the defendant, for this reason: He was the alienee,
by mere gift, of one of his father's farms.   The debt in suit, if
a debt at all, was a subsisting debt at the time of the alienation,
due by his father to the plaintiff's intestate.   Hence the con-
veyance of the land would be a voluntary conveyance, and
therefore a fraud upon David Zartman's creditors.   That being
so, the land could be followed in Peter Zartman's hands for

Syllabus.

the satisfaction of the plaintiff's claim, if a judgment were recovered in the present action. If there were personal estate of David Zartman in the hands of his administrator sufficient for the payment of all his debts, the land of the witness could not be followed for the debt of David Zartman, and in that event the witness, having assigned all his interest in the estate of David Zartman, would be disinterested, and would be competent to testify. But it is alleged by the appellee, and not denied by the appellant, that David Zartman left no personal estate, and that the administrator's account showed a balance of $33.69 due the accountant. If this be so, the witness Peter Zartman would be interested in preventing a recovery in this action, and of course the assignment of his interest in his father's estate would have no effect to divest that interest. His interest would be adverse to that of the plaintiff's intestate, and he would be disqualified under clause (e) of the fifth section of the act of 1887, P. L. 159; and he would not be qualified under the sixth section of the act, because his own interest in his own land is not covered by the assignment, and consequently still remains. We think the fourth and fifth assignments are not sustained.

Judgment reversed, and venire de novo awarded.