## M. B. Simrell *v.* Francis Miller, Exr. of Phœbe Ann Simrell, Appellant.

*Statute of limitations—Married women's promise to pay debt barred by statute—Long delay—Strict proof.*

To revive a claim against a married woman barred by the statute of limitations requires a positive promise to pay an identified debt; a mere acknowledgment, however clear, will not be sufficient. Kelly v. Eby, 141 Pa. 176, followed.

Where a creditor waits twenty-five years, and until after the death of the debtor, before taking any steps to recover his debt, he will be held to strict proof at every step.

*Effect of several insufficient acknowledgments.*

Several insufficient acknowledgments will not constitute a sufficient one; hence both the identity of the debt and the promise to pay must appear from the same acknowledgment: Patterson v. Neuer, 165 Pa. 66, followed.

Where, therefore, one witness testified that defendant's testatrix promised to give plaintiff the amount of his claim, but failed to identify the debt otherwise than by reference to a paper which was not produced, and another witness testified that at another time plaintiff, in his presence, showed defendant's testatrix a paper upon which he said was written $320, to which she replied " if she couldn't raise the money why he (the plaintiff) would have it out of the land." *Held*, that as neither acknowledgment was sufficient by itself, the plaintiff could not recover.

Argued Feb. 25, 1895. Appeal, No. 424, Jan. T., 1894, by Francis Miller, Exr. of the last will and testament of Phœbe Ann Simrell, deceased, from judgment of C. P. Lackawanna Co., Nov. T., 1890, No 207, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Reversed.

Assumpsit for money loaned to decedent. Before ARCHBALD, P. J.

At the trial it appeared that plaintiff was decedent's son;

that this action was brought against her executor to recover money loaned sometime between the years 1860 and 1865. To remove the bar of the statute of limitations, B. P. Lowry was called as a witness for the plaintiff. His testimony was objected to, the objection overruled and a bill sealed for defendant. His testimony was that he was at the house of the decedent six or seven years before the trial (1893); that the decedent, her husband and the plaintiff were present. He heard a conversation between them which he did not distinctly remember. The substance of it he said was: " I know that while I was there Byron (plaintiff) came there, and him and his mother after dinner were talking of some matters that had been transacted previous, and they were talking of money matters and she promised that she would give Byron the money that fall. Q. What money? A. The money that Byron had let her have. Q. Did she say how much it was? A. It has been a good while ago; I don't know just exactly but I think that Byron had let her have money two or three different times; Byron went and got some paper and showed her what it was, and she acknowledged that the money that was on the paper was all right. Q. What did she say this money was for? A. That Byron had let her have it for purposes, she didn't say what the money was given for. Q. Do you remember what the amounts that he named in her presence were? A. Positively I couldn't tell you. Q. To the best of your remembrance? A. There was two or three, I didn't pay much attention to it. Q. Two or three amounts? A. Yes, sir; I remember one of $170. Q. Can you remember what any other was? A. No, sir. Q. Do you know what paper it was he had on which the amounts were mentioned? A. I do not. Q. Do you remember what time she said she had borrowed this money of Mr. Simrell? A. No, I don't think I do; I think she said Byron ought to have had the money before.

On cross-examination, he testified: Q. These two items, one of $25.00 and one of $170, are the only two you recall, are they? A. No, there was one more that I heard them talk of, of some money that had been paid through William Decker. Q. When did you understand from what was said there that she had had this money? A. She said it was more than due and ought to have been paid. [1]

The court charged the jury in part as follows:

" The plaintiff, M. B. Simrell, seeks to recover in this action from the executor of his mother money which he claims he advanced or loaned to his mother, and which she, in her lifetime, agreed to repay him.   Mrs. Simrell, the mother, is dead, and the plaintiff for that reason has not been able to testify himself upon the witness stand as to what occurred during his mother's lifetime.   He stands at that disadvantage.   Of course, on the other hand, Mrs. Simrell being dead, and her estate being represented here by an executor, the executor who defends for the estate stands also at a disadvantage, because whatever Mrs. Simrell would have testified upon this matter is lost by her death.

" The plaintiff, therefore, has been compelled to rely upon the testimony of others than himself, and on the part of the defendant no testimony has been offered whatever.

" The first witness on the part of the plaintiff was B. P. Lowry.   He says that he was present at Mrs. Simrell's when her son Byron, the plaintiff here, was also there, and upon that occasion Byron brought forward a paper which he stated showed what she owed him for money that he had let her have.   He remembers that there were two or three amounts given upon it, that one was $170, another $25.00, and he cannot say what the third amount was; [and he further says that Mrs. Simrell at that time said that she owed this money, and that Byron, her son, ought to have been paid it before.   He says that this money which was spoken of at that time had been advanced quite a number of years before that] ; [4] there is other evidence to show, and the plaintiff admits that this money was advanced, the last of it, as long ago as 1865.

" In addition to this the plaintiff has put John Harvey on the stand, and he testifies to being at Mrs. Simrell's on the same occasion that Lowry speaks about, [he heard the same conversation and the same admissions, but in addition he states that he remembers the amount was spoken of, and it was said to be $320.] [5]   Mrs. Simrell at that time according to the testimony of Mr. Harvey said that if she could not raise the money the plaintiff could have it out of the land, and she said she would try and pay him. . . .

" The testimony undisputed is that Mrs. Simrell had a husband living at the time this conversation occurred, and when the money was borrowed, if it was, and her husband survived

her; [so that at the time this conversation took place, if it did take place at all, she must have been a married woman, whether it took place in 1886 or 1887; but if it took place in 1887, in September, at that time the legislature, as I have already said, had enlarged the liabilities of married women, and she would then have been able, by her promise, even though her husband were living, to make herself liable for a preceding loan.] [6]. . . .

" If you should believe it was in 1886, even though it were established in all its parts to your satisfaction, as these witnesses say, still the plaintiff would not be entitled to a verdict, and could not recover in this case, because that would be before the act of 1887, and would not be such an obligation as a married woman at that time was enabled under our law to bind herself with. . . .

" You are all familiar with the fact that a debt outlaws in six years, as we call it. The lawyer speaks of the statute of limitations, and the judges, too; but we commonly among the people speak of a debt as outlawed; that is, after the debt has stood for six years without any attempt to recover or enforce it, a man cannot collect it; it has gone; it is just the same as though it were wiped out. But a party, even though a debt be outlawed in that way, is under a moral obligation to pay it. Even though the law, by reason of the policy which has moved the legislature to make this enactment, will not permit him to recover after six years, still the other owes it if it has not been paid. [So there is a moral obligation in regard to it. And if a debt, in that situation, is more than six years old, and a party promises to pay it, or admits that he owes it in such a straight-forward and unequivocal way that the law presumes that he means to pay it, then he is liable on that promise, express or implied.] [7]

" This debt in 1886 was over ten years old, instead of six. If the last of this money was borrowed in 1865, and the promise made in 1887, the statute of limitations would have run twice; that is it would have been twice outlawed. Where a debt stands that way, the longer it stands, when we come to sift the testimony to support it, we naturally require stronger and more convincing testimony to satisfy us and to relieve the debt from the bar which the law has interposed.

" [So that in this case with regard to this claim, if you are

satisfied that the plaintiff advanced money to his mother, you must be satisfied that she made this promise in 1887, that her attention was called to the debt, and to the amount of it, and that she admitted in a clear and unequivocal way that it was due, and that she intended to pay it, and would pay it, not that she intended to pay it in some indefinite time, but that she actually admitted it as an obligation, resting upon her at that time. The testimony, if you believe it, goes that far. These witnesses say that a paper was produced showing the amount; that the amount was mentioned, and that she said that she did owe that amount and that it ought to have been paid before], [8] and that she would try to raise the money and pay it; if she could not pay it that it would come out of the land. If she merely made an admission with conditions that she would pay it when she got the money, or something of that kind, that would not satisfy the law; but if she made an absolute admission that she owed the debt, and that she would pay the plaintiff, if the evidence produced on his part goes that far, and this promise was made in 1887, not in 1886, then the plaintiff would be entitled to a verdict at your hands."

The court refused, upon request, to give binding instructions for the defendant. [9]

Verdict and judgment for plaintiff for $435.20. Defendant appealed.

*Errors assigned* were, (1) admissions of testimony as above: (4–9) instructions of the court as above, quoting them.

*George M. Watson* and *C. B. Gardner*, *R. A. Zimmerman* with them, for appellant.—A promise to pay made by a married woman, prior to the passage of the married persons' property act of June 3, 1887, P. L. 332, is not binding. Even admitting that the promise to pay was made after the passage of the married persons' property act of June 3, 1887, the promise is insufficient to remove the bar of the statute, as the original contract was without validity: Glidden v. Strupler, 52 Pa. 400; Berger v. Clark, 79 Pa. 340. An implied promise is insufficient: Allison v. James, 9 W. 380; McClelland's Ex'rs v. West, 59 Pa. 487.

A conditional promise is not sufficient to remove the bar of

the statute: Bank v. Patton, 14 Pa. 479; Linderman v. Pomeroy, 142 Pa. 168. No acknowledgment was shown by the testimony to have been sufficiently distinct and palpable to preclude hesitation about the debtor's meaning, or sufficiently clear, plain, unambiguous and express to remove the bar of the statute: Allison v. James, 9 W. 380; Webster's Ex'rs v. Newbold, 41 Pa. 482; McClelland's Ex'rs v. West, 59 Pa. 487; Landis v. Roth, 109 Pa. 621; Burr v. Burr, 26 Pa. 284.

*A. A. Vosburg, W. S. Hulslander* with him, for appellee.—All that is necessary to remove the bar of the statute of limitations is such an acknowledgment of the debt as is consistent with an undertaking to discharge it. From a clear and distinct acknowledgment, a promise may be inferred, if the acknowledgment is consistent with the promise: Bolton v. King, 105 Pa. 78; Yaw v. Kerr, 47 Pa. 333; Wells v. Wilson, 140 Pa. 645. Since the passage of the married persons' property act of June 3, 1887, P. L. 332, there can be no question as to the power of a married woman to bind herself or her estate by such an acknowledgment: Brooks v. Bank, 125 Pa. 394; Milligan v. Phipps, 153 Pa. 208; Adams v. Grey, 154 Pa. 258. Whether the money is necessary, or the obligation wisely incurred, is solely for her to decide: Spotts' Est., 156 Pa. 281. The moral obligation arising from the pre-existing indebtedness was sufficient consideration to sustain the new promise: Bolton v. King, 105 Pa. 78.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

The learned judge instructed the jury that the plaintiff must recover, if at all, on the testimony of Lowry and Harvey, the other witnesses being "in a measure corroborative," but not sufficient to make out the case if those two did not do so.

Lowry testifies positively to the promise to pay, "she promised that she would give Byron the money that fall," but he does not identify the debt. He not only fails, but distinctly declines to say how much it was, but says the plaintiff went and got a paper, and his mother said "the money that was on the paper was all right." This paper is not produced, or accounted for, and without it the testimony amounts to nothing. It is not nearly so strong as that which was held insufficient in Landis v. Roth, 109 Pa. 621.

Harvey also refers to the paper but fixes the amount at $320. But he does not make out any sufficient promise to pay. According to him, the decedent said, "if she couldn't raise the money why he (the plaintiff) could have it out of the land." This was at most a conditional promise to pay when able, and the additional statement that if she was not able plaintiff could have it out of the land, is not a promise but a remission of plaintiff to his legal rights for a recovery. In Lowry v. Robinson, 141 Pa. 189, the promise was to pay "when he got ready" and "he said he didn't have the money just at present, but he intended to pay it when he had it," and this court said emphatically that "a claim twice barred by the statute of limitations should have a better foundation." See also Linderman v. Pomeroy, 142 Pa. 168.

Neither of these witnesses by himself makes out a positive promise to pay an identified debt, and without that plaintiff cannot recover, for even if a clear acknowledgment of the debt were made out, which it is not, the decedent being a married woman at the time of the alleged loan and the alleged promise, would not be bound by it: Kelly v. Eby, 141 Pa. 176.

Nor can the testimony of the two witnesses be combined to bring either of them up to the required standard. As our brother McCollum said in Patterson v. Neuer, 165 Pa. 66, if an acknowledgment "does not appear in either of their conversations it cannot be inferred from both. In other words several insufficient acknowledgments will not constitute a sufficient one."

The plaintiff's claim is brought forward under circumstances that raise every presumption against it. His alleged loan was made to his mother, a married woman at the time, and he waited twenty-five years and until she was dead before taking any steps to get payment. Parties who do this must understand that they will be held to strict proof of every step towards their claim. The plaintiff failed to make out his case, and the request for a binding instruction for the defendant should have been granted.

Judgment reversed.