# George W. Drawbaugh, Administrator of John B. Drawbaugh, Appellant, *v.* Daniel Drawbaugh.

*Evidence—Statute of limitations—Sufficiency of admission to bar the running of the statute.*

When a claim to recover a debt barred by the statute rests on admission of the indebtedness, the acknowledgment thereof must be unqualified. It must be consistent with a promise to pay on demand. It must not be accompanied by such other expressions as indicate a willingness to pay at some future time. The language must preclude hesitation as to the debtor's meaning.

A debtor's agreement to pay when he gets the money from some named or unnamed source, is not sufficient to revive the debt.

Argued March 18, 1898. Appeal, No. 58, March T., 1898, by plaintiff, from judgment of C. P. Cumberland Co., on verdict for defendant. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY and PORTER, JJ. Affirmed.

Assumpsit. Before E. W. BIDDLE, P. J.

It appears from the evidence that plaintiff claimed a balance of $397.81 alleged to be due the decedent by defendant for services rendered. The defendant pleaded non assumpsit infra sex annos. The question turned on the sufficiency of plaintiff's testimony to remove the bar of the statute of limitations.

Other facts sufficiently appear in the opinion of the court.

Verdict for defendant. Plaintiff appealed.

*Error assigned* among others was directing the jury to find a verdict for defendant.

*J. M. Weakley*, for appellant.—The bar of the statute may be removed by admission: Davis v. Steiner, 14 Pa. 275; Johns v. Lantz's Admr., 63 Pa. 324; Palmer v. Gillespie, 95 Pa. 340.

Proof of an express promise to pay is unnecessary where there is proper proof of the acknowledgment of the debt. It is apparent, however, that an express promise to pay was sufficiently proved: Wells v. Wilson, 140 Pa. 645; Spotts's Est., 156 Pa. 281; Landis v. Roth, 109 Pa. 621.

*Conrad Hambleton*, with him *J. W. Wetzel* and *J. H. Shopp*, for appellee.—When a claim to recover a debt, barred by the

statute of limitations, rests on the admission of the indebtedness, the acknowledgment thereof must be unqualified. It must be consistent with a promise to pay on demand. It must not be accompanied by such other expressions as indicate a willingness to pay at some future time: Kensington Bank v. Patton, 14 Pa. 479, followed and approved in Lawson v. McCartney, 104 Pa. 356; Keener v. Zartman, 144 Pa. 179.

Several insufficient acknowledgments will not constitute a sufficient one, hence both the identity of the debt, and the promise to pay must appear from the same acknowledgment: Lowrey v. Robinson, 141 Pa. 189; Patterson v. Neuer, 165 Pa. 66; Simrell v. Miller, 169 Pa. 326.

OPINION BY WICKHAM, J., May 17, 1898:

The only question raised, by the appellant, relates to the sufficiency of his own testimony to remove the bar of the statute of limitations.

After the death of John B. Drawbaugh, the plaintiff found, in a bureau that had belonged to his father, the decedent, a book containing an account for services, of some sort, rendered by the latter to the defendant. Several years later, and after a number of conversations about the account, not worthy of consideration, so far as their bearing on the question before us is concerned, the plaintiff and defendant came together to effect a settlement. Looking at all the testimony of the plaintiff, what occurred between the parties may be summed up by saying, that the defendant admitted the correctness of the items of the account, but claimed that he had some offsets for moneys loaned the deceased, which he wanted to look up, and stated that he would pay the account when he got certain money, that he expected from a telephone company to which he was about selling an invention.

No balance was struck, and the inference from the plaintiff's testimony, giving due effect to his cross-examination, is that the parties did nothing that would advance the claim to the rank of an account stated. Whether the defendant ever obtained any money from the telephone company is not disclosed by the evidence. The plaintiff farther testifies, that the defendant, at the time of the attempted settlement, also offered to arrange the claim, by giving his note for $100 and erecting a

monument over the grave of the decedent. The cost of the monument was not definitely stated. The plaintiff inferred that it would be $100 or $150. This rather vague offer was rejected.

After this, the defendant told the plaintiff that he would pay when he, the plaintiff, had taken out letters of administration. When the letters were obtained, another conversation took place between the parties, which we will give in the plaintiff's own words: "After I had taken out papers, I asked him whether he was ready to fix up the account, and he said he didn't have any money, but he had several offsets he wanted to look up; I said he had a right to look up his offsets; afterwards he had found some of his offsets, and a great many of them I thought were imaginary, and I would not accept them; through that it came to what it is now." Furthermore, the plaintiff testifies that the defendant told him, as often as a dozen of times, that he would pay "as soon as he got the money." It also appears, that immediately after John B. Drawbaugh's death, the defendant gave the plaintiff, his nephew, who was then superintending the funeral of the deceased, $10.00, but, on what account it was intended, by the defendant, to be applied is not shown, or at least is left so doubtful, that the payment affords the plaintiff's case no help.

The above are the material facts, as furnished by the evidence, relating to the contention we are called on to decide. Although the question has not been raised, it may be remarked here, that a sufficient promise or acknowledgement made to a son interested in his father's estate, before the taking out of letters of administration, would be enough to lift the bar of the statute, and, upon the grant of letters to him, could be used to sustain the claim: Keely v. Wright, 5 W. N. C. 241.

In Lawson v. McCartney, 104 Pa. 356, it was said: "When a claim to recover a debt barred by the statute rests on the admission of the indebtedness, the acknowledgment thereof must be unqualified. It must be consistent with a promise to pay on demand. It must not be accompanied by such other expressions as indicate a willingness to pay at some future time: Kensington Bank v. Patton, 14 Pa. 479. No implication less than this will toll the statute. The language should be so clear as to preclude hesitation as to the debtor's mean-

ing." This language is quoted approvingly in Keener v. Zartman, 144 Pa. 179, and we know of no Pennsylvania case wherein the rule, thus laid down, has been modified.

The plaintiff's case, tested by the requirements just mentioned, cannot stand. The promise to pay, made by the defendant at the time of the examination of the books, is too ambiguous. The parties evidently separated with the understanding, that the defendant had offsets, indefinite as to amounts, against the account, the benefit of which he expected and intended to claim. This appears by the plaintiff's statement as to what occurred at the time, and also by his recognition, after the letters of administration were granted, of the defendant's right to look up these offsets, and, from what the plaintiff farther says, the necessary implication is, that not all of the defendant's claims, which were afterwards presented, were unfounded. The amount of the indebtedness, which the defendant admitted, was left uncertain from beginning to end.

As to the later promises to pay, every one was conditional. A debtor's agreement to pay, when he gets the money from some named or unnamed source, is not sufficient to revive the debt: Simrell v. Miller, 169 Pa. 326. The nearest approach to a definite and unconditional promise is the statement of the defendant to the plaintiff, viz: "He said I was supposed to take out letters of administration, and as soon as I got them out he would pay me." Pay what? From what occurred between the parties earlier, and when the letters were issued, it is apparent that the defendant meant, and should have been understood to mean, that he would pay whatever would be found to be due from him, on a final settlement. The parties failed to agree, when the defendant produced his offsets, hence no settlement was ever made.

Taking into consideration all the evidence, and the necessary inferences to be drawn therefrom, we think that the learned trial judge committed no error, in directing the jury to find for the defendant.

Judgment affirmed.