## Kissinger et al., Appellants, v. Pittsburgh Railways Company.

Argued May 2, 1935. 

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Robbin B. Wolf*, of *McCreery & Wolf*, with him *W. Davis Graham*, for appellants.

*W. A. Challener*, with him *J. R. McNary*, for appellee.

OPINION BY PARKER, J., July 18, 1935:

Carrie B. Kissinger and Sam. W. Kissinger, her husband, recovered verdicts against the defendant company for personal injuries suffered by the wife when struck by a street car at the intersection of West Carson Street and Tabor Street in the City of Pittsburgh. The court below granted defendant's motion for judgment n. o. v. as to each of the verdicts, and the plaintiffs have appealed.

On this motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to plaintiffs, all conflicts therein being resolved in their favor, but they must be given the benefit of every inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence (Guilinger v. P. R. R. Co., 304 Pa. 140, 144, 155 A. 293), including evidence produced upon both sides: Hoff v. Tavani, 111 Pa. Superior Ct. 567, 570, 170 A. 384; Magasiny v. Smithian Trucking Co., 107 Pa. Superior Ct. 84, 163 A. 314. The evidence will be so stated.

We will first refer to the geography of the situation, as a condition existed at this street intersection somewhat out of the ordinary. West Carson Street extends in a generally east and west direction. On the north side of that street at the intersection in question are the tracks of the Pittsburgh and Lake Erie Railroad, and a high iron fence has been erected on the northerly curb line having its foundation in a cement base, leaving no sidewalk on that side of the street. A double line of street car tracks is located in the center of the street, with a space for other vehicles, about nine feet ten inches in width, on each side of the tracks. There are no dwellings or business places on the north side of the street. Tabor Street, running north and south, meets Carson Street on its southerly side and there terminates. Large stop signs were located over the tracks of the traction company about opposite the east and

west sidewalks of Tabor Street and at those locations there were regular stopping places for the street cars, it being the settled practice for its cars to stop on the near side. As there was not a sidewalk on the north side of West Carson Street and the patrons of the street car company came from the south, it was necessary for a passenger intending to take a west-bound car to leave the south line of West Carson Street and pass over both tracks and wait for an oncoming west-bound car in the cartway. The location was well lighted and there were stepping stones in West Carson Street in line with the east sidewalk on Tabor Street.

The plaintiffs lived about a block and a half from West Carson Street on Tabor Street and, at about eight P. M., November 9, 1929, Carrie B. Kissinger, intending to board a west-bound car which she observed when she was at the south curb line of West Carson Street, left the curb and proceeded northwardly across both the east-bound and west-bound tracks, at the same time signalling for the motorman to stop and continuing to signal until she reached a point in the cartway between the street car tracks and the north curb. The motorman called by the defendant admitted that he saw Mrs. Kissinger when she started to cross the street, and one of plaintiffs' witnesses testified that he saw her signaling and advised the motorman but that the motorman was not keeping a sharp lookout. When she reached a point in the cartway north of the line in which the street car was traveling, she observed an automobile approaching close to the line of the street car tracks at a high rate of speed, when she stepped back close to the north rail. She then observed that the street car was not stopping and, as she alleges, being trapped backed up motioning to the motorman to stop, but was struck a glancing blow by the street car before it was brought to a stop some little distance west of the stop signs where the street car was usually stopped.

The court below entered judgment for the defendant upon the ground that the wife plaintiff was guilty of contributory negligence in not stepping back when, it is alleged, she had ample time to step to the side of the track and avoid being struck by the street car. The defendant and the court below tacitly admit that the negligence of the defendant company was for the jury as the opinion and argument are confined to a consideration of alleged contributory negligence.

The case of Dickun v. Pittsburgh Rys. Co., 308 Pa. 20, 161 A. 739, involved principles similar to those with which we are here concerned. There the plaintiff's wife, having ample time to go safely, passed from one platform of a trolley station to another on the opposite side to take a car and while crossing the second track was struck and killed by a car which did not stop at the station as deceased expected, but proceeded at a high rate of speed. Mr. Justice KEPHART, in that case, said (p. 22) : "She had a right to assume it was a scheduled car that would stop. She was mistaken, but the mistaken assumption was not the result of her own carelessness . . . . . . She had a right to assume the car would stop, and was not bound to anticipate that it would disregard its representation both as to operation and stopping, and that it would negligently pass the stopping point at a high rate of speed without warning." We are not unmindful of the fact that in that case the accident occurred in a suburban district and that that case is not similar to that of a pedestrian in a public crossing in an urban district (Klingensmith v. West Penn Rys. Co., 279 Pa. 336, 123 A. 787), but in the case we are considering the plaintiff was obliged to proceed in just the way she did in order to take a car, and she was exposed to the danger of passing automobile traffic which was heavy, a fact which defendant was bound to know. The motorman saw her and should have seen

her signals, for the witness who stood right next to him saw her signalling and advised the motorman who then threw on his brakes and caused the car to slide fifteen feet. As a fact, she did reach a point on the cartway north of the street car tracks when she stepped back close to the tracks and then backed up still signalling before the car struck her. The street car company knew the situation which existed at this corner and was called upon to exercise care according to those circumstances. There was at least sufficient evidence to submit to the jury the negligence of the defendant and the alleged contributory negligence of the plaintiff. We are of the opinion that, under the circumstances shown, the jury could properly find from the evidence that the intending passenger was warranted in assuming that the street car would stop at its usual stopping place pursuant to her signal, and she was not bound to anticipate the negligence which resulted in her injury. "A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury:" Wagner v. Phila. Rapid T. Co., 252 Pa. 354, 359, 97 A. 471. The company was bound to know that there was heavy traffic upon this part of the highway and that intending passengers would be placed in peril by such traffic when waiting to embark. Mrs. Kissinger was placed in a position of sudden peril and was not called upon to use that degree of care required of one who is not under stress.

The main argument of the appellee is based upon the assumption that the evidence showed that the plaintiff wife had ample time to step off the track and avoid being struck, it being insisted that her own testimony demonstrated that the automobile passed her position sufficiently in advance of the street car to afford her such opportunity. There was some conflict in the testi-

mony, but it was for the jury, where the facts were complicated as they were here, to reconcile such testimony and discover where the weight lay. The lower court predicated its conclusion upon premises stated as follows: "The automobile passed, going very rapidly. At the time it passed her the street car was 40 feet away, according to one part of her testimony, and a half square away, according to another statement by her. As the street car continued on toward the point where the stop sign was erected, she observed that it was not going to stop and backed down the street for 15 or 20 feet, facing the street car, and signalling for the motorman to stop. She backed down the cartway so close to the rail that she was apparently struck by the overhang of the street car." The plaintiff undoubtedly said that when the automobile passed her the street car was forty feet away. We think the jury might have concluded that another statement that she made with relation to the street car at that time being half a square away related to a slightly different time as she stated in that connection that at that time she stepped toward the track. On the other hand, several witnesses placed the car and automobile immediately before the accident as running side by side. There was, however, another powerful piece of evidence not dependent upon combined estimates of time and distance which bore upon the relative positions of the two moving objects, a relation difficult to fix with accuracy. The witness, Albert W. Bauer, who was standing alongside the motorman and saw all the movements, testified that when the street car hit her, it threw her against the machine which struck her and threw her back to the street car. If such was the fact, the vehicles must have been running approximately side by side. We also call attention to the fact that the parties described a square as being one hundred fifty feet, much shorter than the usual square. We cannot, under these circumstances, agree

with the court below that there was evidence which compelled a conclusion that the automobile passed sufficiently in advance of the street car to allow the plaintiff to avoid being struck, particularly as the plaintiff was placed at the time in a position of great peril.

"The exact sequence of startling events crowded into a brief period of time, and productive of excitement and confusion, is often a matter of doubt, even in the most honest and accurate memory; and in the reiterated narration of such occurrences, in chief and on cross-examination, the most candid witnesses sometimes fall into apparently confused and inconsistent statements. The doubt resulting therefrom it is the province of the jury to settle": Kohler v. P. R. R. Co., 135 Pa. 346, 357, 19 A. 1049. We are of the opinion that the facts herein were not sufficiently clear to warrant the court in disposing of the question of contributory negligence as a matter of law. Judgment n. o. v. should only be entered in clear cases.

Judgments reversed, and the court below is directed to enter judgments on the verdicts.