Pfeiffer *v.* Kraske, Appellant.

Argued December 12, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward M. Hawes,* with him *George H. Detweiler* and *Franklin L. Wright,* for appellant.

*Thomas E. Foulke,* with him *Edward B. Duffy,* of *Foulke, Foulke & Duffy,* for appellee.

OPINION BY STADTFELD, J., March 2, 1940:

On November 17, 1930, the defendant, a trolley repairman for the Philadelphia Rapid Transit Company, suffered an injury in an accident in the shop and was taken to the Abington Memorial Hospital, where he was treated in the receiving ward while yet in an unconscious condition. After such treatment he became conscious and was placed in a bed in the general ward of that hospital. No surgical services were performed by anyone. He was attended and treated by the nurses and internes on the floor. Dr. Pfeiffer, the plaintiff, was chief surgeon of Abington Memorial Hospital at that time and irregularly made trips through the wards. He never personally attended or talked with the defendant and the defendant had no knowledge whatsoever that Dr. Pfeiffer was in any way connected with his case. The defendant was treated for bruises, contusions and fractures of the second, third, fourth and fifth lumbar vertebrae. The services performed were such that he was made comfortable, his general needs looked after and he was allowed to rest until a celluloid case or jacket was made to further support his back, after which he was discharged from the hospital on January 22, 1931. His hospital bill, including his bed, board, x-ray, medicine and special examination charges, in excess of $300, was paid at the time of his discharge from the hospital. After several months, the plaintiff, Dr. Pfeiffer, sent a bill for $100 for the first thirty days of treatment, to the Philadelphia Rapid Transit Company. When payment was refused, he made claim for the same amount before a Workmen's Compensation referee, but the referee refused the claim. He then,

about one and one-half, or two years after the defendant's discharge from the hospital, forwarded a bill for $100 to the defendant. Upon the defendant's denial of the obligation and refusal to pay the bill, an action in assumpsit was instituted before a Justice of the Peace and came into the court of common pleas on appeal. The statement of claim set forth the allegations that the plaintiff is a physician and surgeon, duly registered; that he was Chief of Staff of Abington Memorial Hospital, Abington, Pa., at the time of the defendant's stay there; that the plaintiff did, at the special instance and request of the defendant, perform certain professional services for which the defendant promised to pay; that the services consisted of treatment and supervision of a fracture of a vertebra and supervision of the construction of a jacket and in supervising the internes and nurses; that the sum of $100 was fair, reasonable and just, and due and payable from the defendant; that the services were accepted by the defendant and no objection was made thereto. Defendant's affidavit of defense denied in particular most of the allegations of the plaintiff; denied any promise to pay; pointed out that the defendant accepted any service rendered as a ward patient; that the only services received were those of a general ward patient; that his hospital bill was paid in full; and denied particularly that the defendant engaged or contracted with the plaintiff for work to be done or for any special surgical services.

Subsequently, the plaintiff filed a motion to amend his statement of claim by amending the second paragraph thereof so as to allege instead of a specific request and promise to pay, that the services were performed "at the implied request" of the defendant and that "defendant impliedly promised to pay plaintiff a fair, just and reasonable price therefor." This amendment was allowed.

The parties themselves were the only witnesses and, after argument of counsel and charge of the court, the

jury returned a verdict in favor of the defendant. Plaintiff filed motions for judgment n. o. v. and for a new trial. The motion for new trial was not pressed.

The opinion of the court below, by KNIGHT, P. J., on the motion for judgment n. o. v., commented that a point for binding instructions was presented by the plaintiff; that this was refused and that the case was submitted to the jury on the sole question of whether the plaintiff intended to donate his services to the defendant. This opinion stated as a fact that there was no such thing as a free patient in the Abington Hospital; that the defendant knew or should have known that some physician was taking care of his case and that he would have to pay for the same; that the only justification for the defendant's believing that the services were rendered gratuitously was the fact that he did not receive a bill for a year and a half after he was discharged, but that a bill was sent to his employer and claim made before a compensation referee; that the plaintiff did intend to charge for his services, as shown by the evidence, and that the only person whom the plaintiff could have held liable was the defendant. The opinion further stated definitely that there was no evidence, as the court viewed the situation, from which a jury could find that the defendant was justified in believing the services of the plaintiff were being rendered gratuitously; denied that any custom was proved that the plaintiff might have rendered his services free of charge and concluded that binding instructions should have been given for the plaintiff.

The court below then, by judgment entered March 6, 1939, set the verdict aside, and entered judgment, notwithstanding the verdict, in favor of the plaintiff and against the defendant for the sum of $100 with six years' interest thereon, or a total sum of $160. This is an obvious mathematical error based on an erroneous 10% interest charge.

On a motion for judgment n. o. v. the governing rule

is set forth in the case of *Lessy, Appellant v. Great A. & P. Tea Co.*, 121 Pa. Superior Ct. 440, 183 A. 657, as follows: "...... The true test of the right to enter judgment n. o. v. is whether at the close of the trial, the court should have given binding instructions: *Ellsworth et ux. v. Husband,* 119 Pa. Superior Ct. 245, 181 A. 90, and the testimony should not only be read in the light most advantageous to the successful party, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issue involved which may reasonably be deduced from the evidence: *Kissinger et al. v. Pittsburgh Railways Co.,* 119 Pa. Superior Ct. 110, 180 A. 137."

We quote from the testimony of the defendant: "Q. Did you ever have any conversation with Dr. Pfeiffer? A. No, only with the doctor who was on the floor. Q. Were you ever treated by Dr. Pfeiffer to your knowledge? A. No." and again, on cross-examination: "Q. Did you see Dr. Pfeiffer there at any time? A. Only going with the Doctor through the ward. Q. You mean he never came to your bed and talked to you? A. No. ...... Q. Did he have any conversation with you while you were in bed? A. No."

This testimony raised an issue of fact as to whether plaintiff rendered any service to defendant.

On the question of whether there were any free patients in the hospital, we quote from the testimony of plaintiff: "Q. It is true that ward patients in general are not charged (by physicians)? A. Of course it is, that is what they are for, they are for people who cannot afford to pay. Q. Except for the two exceptions you mentioned? A. Except for the ability to pay. Q. That is both the hospital and the physicians rule regarding ward patients? A. Based on ability to pay."

The plaintiff excepted from the general rule, cases paid through the Workmen's Compensation Board and those where there is abuse of the presumption of in-

ability to pay shown by admission to a ward in the hospital. The defendant's occupation was that of a trolley brakeman necessarily of limited financial ability.

On the question of whether there was any intention on the part of plaintiff or defendant that plaintiff was to charge the defendant, we quote from the testimony of plaintiff: "Q. After the defendant was discharged did you render the bill for your services? A. Yes, several months later a bill was rendered for my services. ...... Q. ...... isn't it true that you did not send that bill to Mr. Kraske? A. It is. Q. You sent that instead to the P. R. T. by whom he was employed? A. I did. ...... Q. Your bill first sent to the P. R. T. some months after Mr. Kraske was discharged from the hospital was based upon your services for the first thirty days of treatment to him, is that not correct? A. That is correct. I did that because this man fell into the compensation group of cases and the law stated at that time that the compensation for professional services was limited to the first thirty days and to one hundred dollars. ...... That explains, I think, ...... why I rendered a bill in that amount because I knew that was all the P. R. T. would possibly be induced to pay ......"

Plaintiff admitted that he sent no bill to the defendant until after trying to collect one hundred dollars from the P. R. T. and then from the Workmen's Compensation Board. The testimony of defendant also supports this statement. We quote from the latter's testimony: "Q. You say you never received a bill from Dr. Pfeiffer until about a year and a half after this? A. It might have been longer. Q. A year and a half or two years after you were out of the hospital? A. Yes. ...... Q. You did not know he was claiming a hundred dollars for services rendered to you until two years afterwards? A. No. ...... Q. You were in the hospital from November 17, 1930 until January 22, 1931? A. Right." From this testimony, an inference might

readily follow that there was no intention to charge for plaintiff's services.

The entire evidence, disputed and undisputed, raised clear contradictions on facts and on the inferences to be drawn therefrom. The question of intent of the parties was the important issue and because of the conflicting testimony of witnesses, could only be decided by the verdict of a jury: *Bremerman v. Hayes, Executor,* 9 Pa. Superior Ct. 8; *Nagy's Estate,* 64 Pa. Superior Ct. 28; *Huston v. Barstow,* 19 Pa. 169.

While there is an implied agreement to pay for the services of a physician, if the services were intended to be and were accepted as a gift or act of benevolence, they cannot, at the election of the physician, create a legal obligation to pay: 48 C. J. 1161.

In addition, we are of the opinion that the plaintiff's position as Chief of Staff of this hospital gave him no individual interest in the services of the internes or other members of the staff who personally attended this defendant, such as to justify his making a personal charge for their services. He was not their employer. The hospital was not a private one, owned and operated by him. Hence he could have no personal and individual claim against this defendant except for services he had personally rendered the defendant, and, as we have already stated, he had never personally attended him.

The disputed questions of fact were submitted by the trial judge, in a fair and comprehensive charge. If the court thought that the verdict of the jury was against the weight of the evidence, the proper remedy was the granting of a new trial. The court could not, under the authorities cited supra, substitute its own judgment for the verdict of the jury.

The twelfth assignment of error, in setting aside the verdict of the jury and directing the entry of judgment in favor of plaintiff, is sustained. Judgment is reversed and it is now ordered and directed that judgment be entered on the verdict in favor of defendant.