McKeehan Estate.

Argued December 1, 1947; reargued January 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Douglass D. Storey,* with him *Storey & Bailey,* for appellant, in No, 133.

*Edward M. Biddle, Jr.,* with him *Edmund R. Finegan* and *Saul, Ewing, Remick & Saul,* for appellee, in No. 133.

*Edward M. Biddle, Jr.,* with him *Edmund R. Finegan* and *Saul, Ewing, Remick & Saul,* for appellant, in No. 139.

*Douglass D. Storey,* with him *Storey & Bailey,* for appellee, in No. 139.

*Arthur H. Hull, George H. Hafer* and *Hull, Leiby & Metzger,* for Dauphin County Medical Society, amicus curiæ.

OPINION BY MR. JUSTICE DREW, March 22, 1948:

These appeals are from the decree of the Orphan's Court of Cumberland County, distributing the balance of the estate of Ada J. McKeehan, Deceased.

The following are the admitted facts: Mrs. McKeehan died testate on November 19, 1943, at the age of eighty-eight years. For some years prior to her death, she suffered from pernicious anemia. Dr. Frank F. D. Reckord, a licensed specialist in internal medicine, was her physician from 1927 until her death. He was the nephew of her deceased husband, who had also been a physician. During this period of sixteen years, Dr. Reckord attended Mrs. McKeehan on many occasions at her home in Carlisle, at his office in Harrisburg and at the Harrisburg Hospital where she had been a patient under his care four different times from 1939 to 1942. He made numerous physical examinations, blood counts and urinalyses for her; and he also on two occasions took her to the University of Pennsylvania Hospital at Philadelphia and returned her to Carlisle. During the sixteen years Dr. Reckord attended Mrs. McKeehan, he never rendered any bill to her and she at no time paid him for his services. His books had numerous entries showing visits by her to his office and by him at her home, as well as the services and treatments by him, but

no charges were entered. Mrs. McKeehan left a gross estate of $84,106.22; and after paying all legacies (including the one of $5,000 which Dr. Reckord, his brother and his sister were to share equally) and all debts (except that of Dr. Reckord which is the claim here in controversy), the residuary estate is $38,683.22, bequeathed to Westminster Theological Seminary at Philadelphia. Following the death of Mrs. McKeehan and subsequent to his learning the amount of the legacy he was to receive, Dr. Reckord, at the instance of her executor, prepared and presented a bill for his services for the six years immediately preceding her death, in the amount of $9,-410.00. An auditor, appointed by the court to pass upon the claim and make distribution, awarded the claimant $5,000. To the auditor's report, claimant, Dr. Reckord, and the residuary legatee, Westminster Theological Seminary, filed exceptions. Certain exceptions of both parties were sustained and others overruled by the learned court below, which allowed $2,738.00 to Dr. Reckord and entered a decree of distribution accordingly. Both the residuary legatee and the claimant have appealed.

It is argued by the residuary legatee that the evidence established that claimant intended, when he rendered the medical services in question, they were to be gratuitous, and, therefore, the learned court below erred in making any award to him whatsoever. To the contrary, however, it is the contention of claimant that the services were not rendered gratuitously, but that there always was an intention to charge for them, that the charges were reasonable and the court was in error in not awarding him the full amount of his claim.

It is well settled that "While there is an implied agreement to pay for the services of a physician, if the services were intended to be and were accepted as a gift or act of benevolence they cannot, at the election of the physician, create a legal obligation to pay": *Pfeiffer v. Kraske*, 139 Pa. Superior Ct. 92, 99, 11 A. 2d 555. See

also *Nagy's Estate,* 64 Pa. Superior Ct. 28, 48 C. J. 1161. This Court said, in *Gibb's Estate,* 266 Pa. 485, 487, 110 A. 236: "Ordinarily, an implied promise exists to pay for services rendered and accepted, and *the burden is on the person denying liability to show no debt was, in fact, intended."* Italics added.

We agree with the learned court below that, under all the evidence presented in the instant case, it was a question of fact for the auditor to determine whether or not claimant intended that his services, when rendered, were to be free of charge. There is sufficient evidence upon which to predicate the finding of the auditor that claimant did not so intend, but that he intended to charge although postponing the time of making an actual charge. This finding by the auditor, approved by the orphans' court, is entitled to the same weight as the verdict of a jury, and cannot be disturbed: *Schwoyer's Est.,* 288 Pa. 541, 136 A. 798; *In re: Est. of A. Koonce, Balliet,* 105 Pa. Superior Ct. 539, 161 A. 578.

To establish his services, claimant presented the testimony of his secretary and office assistant, his day or engagement books, progress notes pertaining to Mrs. McKeehan and records of Harrisburg Hospital. This testimony of his secretary, books and records were properly admitted in evidence to prove the number of visits and treatment prescribed, since they were made contemporaneously with the acts to which they purport to relate, they were made under circumstances which suggest no motive for falsification and they were made by persons having knowledge of the facts set forth: *Paxos v. Jarka Corp.,* 314 Pa. 148, 171 A. 468; *Freedman v. Mutual Life Ins. Co. of N. Y.,* 342 Pa. 404, 21 A. 2d. 81. See also Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, sec. 1.

As to the matter of compensation for the services rendered, it is well established, as was stated in *Husik v. Lever,* 95 Pa. Superior Ct. 258, 260, quoting from 21 R. C. L. 415, sec. 57: " 'In the absence of an express

agreement as to amount, the law implies a promise to pay for a physician's services as much as they are reasonably worth.'" In this connection, we said, in *Pfeiffer v. Dyer*, 295 Pa. 306, 311, 145 A. 284: ". . . physicians should not have their services valued as you would commodities in trade by a fixed standard; what would be a proper charge for the same service to a man fully able to pay would be excessive to a man of limited means, and what would be willingly done for the indigent without thought of financial reward should be compensated for by one who can afford to pay on the scale which doctors of repute measure as the proper one."

In order to substantiate the reasonableness of the amount of his claim, Dr. Reckord called two Harrisburg doctors, each of whom stated that in his opinion the services rendered by claimant were worth $10,000. It must be borne in mind that while the opinion of other physicians is competent on the question of the value of a doctor's services, it is not so conclusive as to take the place of the judgment of the court whose duty it is to pass on the question of the value of the services. That is a matter within the sound discretion of the court. See *Gleckel Estate*, 155 Pa. Superior Ct. 383, 38 A. 2d 374.

In disregarding the testimony of these experts of claimant, the court below properly said: "Their opinions were based on all the evidence given at the first hearing before the auditor which included the incompetent testimony of the claimant and other incompetent evidence. The opinions stated a lump sum for six years' services and no opinion was elicited as to reasonable charges for various types of service, such as office calls, laboratory work, examinations, home and hospital visits. We will not disturb the finding that the opinions 'would not be of very great service to the auditor.'"

Other than these opinions, claimant produced no evidence whatever as to the value of the services rendered. The burden was on him to do so. Under the cir-

cumstances, he cannot justly complain that the court below considered the admissions contained in the testimony adduced by him as to charges to his other patients for services similar to those rendered to Mrs. McKeehan. He in no way was prejudiced thereby, for if the court had not so done, a nominal award only could have been allowed.

The court below said : "We agree that the claimant visited and examined the decedent on many occasions. We cannot agree that each examination involved much time and skill in interpreting findings. The decedent apparently had a chronic condition and we gather from the evidence that the claimant's services were largely routine, checking pulse, blood pressure, heart, lungs, throat, making urinalyses and blood counts and from time to time prescribing medicines and drugs. We have made an exhaustive study and tabulation of all the records from which we are able to set out in detail the various services rendered by claimant. We have also determined from all the evidence what we deem to be the reasonable value of the services rendered, considering, inter alia, the type of service and the time consumed in rendering it and also considering, as admissions, the charges made to others." Under all the evidence, we are convinced that the court did not abuse its discretion in fixing the value of the services at $2,738.00 and, therefore, we will not interfere with its judgment.

Decree affirmed; costs to be equally divided between appellants.