## Stoneroad Estate

*Harold R. Schmidt*, for accountant.

*Wilner, Wilner & Kuhn*, for claimant.

RAHAUSER, J., May 29, 1959.—Joel T. M. Stoneroad died testate January 1, 1958. His will was probated in the Register of Wills' Office of Allegheny County. The executors, Royal A. Miller and Fidelity Trust Company, filed their account and the same came up for

audit. At the audit Michael F. Dimun, M.D., filed his claim for $8,500 for medical services rendered to decedent. This claim was not admitted by the executors. The matter was placed at issue and at the hearing Dr. Michael F. Dimun attempted to prove his case by offering in evidence his account book. The account book consisted of 10 sheets of heavy ruled 9" x 5" paper, stapled together with one side of the page ruled for case history and the other side of the paper ruled for the insertion of the dates and notations relating to calls on the patient.

The exhibit showed the name of the patient, Stoneroad, Joel T. M., his age and family history.

The dates on the exhibit ranged from July 7, 1950, to October 1, 1957.

Mrs. Nancy Dempsey testified that she recognized the account book, that she had custody of the records of Mr. Dimun from December 1, 1956, until February 1, 1958. Mrs. Dempsey testified that she could identify the handwriting of entries made before her employment began. She made no effort to identify the typing that was placed on the card or book account either before or after her employment. Mrs. Dempsey further testified that she made the entries on the book account immediately after the patient left the office. In the case of Mr. Stoneroad, she testified that the doctor made all house calls on his patient and that she entered the calls that the doctor made on Mr. Stoneroad when he informed her of the calls made.

Mrs. Betty Dimun testified that she looked after the records in her husband's office from the time he started to practice medicine, except for the time when Mrs. Nancy Dempsey took care of the doctor's office. She identified the handwriting. She testified that the typing was made by the typewriter in her husband's office and that the typing and handwriting on the Stoneroad account was that of her husband, Dr. Dimun.

She testified that the typing was transcribed from the original that she kept and that her handwriting did not appear on the cards or book account.

Upon this testimony the records were offered in evidence to show that the record was kept in the regular course of the physician's practice and qualifies as evidence under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42.

The offer was objected to and the objection sustained.

Dr. Dimun took the stand and offered to testify to the method of making the entries during the lifetime of decedent. This offer was objected to and the objection sustained.

The allowance of this claim or any part thereof is determined by the rules of evidence that must be adhered to when claimant is incompetent under section 5(e) of the Evidence Act of May 23, 1887, P. L. 158.

The questions are:

1. May the doctor testify as to the acts performed in the keeping of his records prior to the death of decedent, so as to qualify the records under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, 28 PS §91b?

2. May the wife of claimant who kept the books testify, so as to qualify the records?

3. Was the testimony of Mrs. Nancy Dempsey sufficient to qualify the records of Dr. Dimun for the period during which Mrs. Dempsey had charge of the records?

4. Was there sufficient testimony to justify the admission in evidence of that part of the doctor's records prepared before Mrs. Dempsey took charge of such records?

The court is of the opinion that Dr. Dimun's records do not come within the category classed as books of original entry. The record contains the accounts of

Joel T. M. Stoneroad only. Some were entered in the course of business and some were not. The Supreme Court in passing on the questions of whether or not similar records qualified under the rule held that they did not. In Fulton Estate, 178 Pa. 78, Mr. Justice Mitchell, at page 87, said:

*"But there is an insuperable objection in the present case, that the book is not one of entries in the regular course of business. It is a separate book containing no charges except against the decedent. This is explained to have been at the decedent's request, but the claimant was not a competent witness to prove such request.* No precedent has been shown for the admission of such a book, and the analogies are all against it."

The court is of the opinion that a physician's books are not admissible as books of original entry, as distinguished from records admissible under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42.

Under Pennsylvania law, a physician's books are not admissible as books of original entry for the purpose of establishing the claim of the physician for services rendered. No professional books are within that rule.

In Hall v. Smitheman, 26 Dist. R. 203, the court said, at page 205:

"But not only is the form of the so-called book entry objectionable, but it is to be noticed that the claim is one for professional services. 'None of the entries were such as the law admits to be evidence of indebtedness to the person who made them. Books of original entries are evidence to prove a claim for goods sold and services rendered, if made in the regular course of business; but as they are evidence made by a party for himself, and very often incapable of being tested by other proof, they are to be guardedly received, and received only to prove a sale and delivery, or labor for

the alleged debtor, for which the law implies a promise to pay': Hale's Executors v. Ard's Executors, 48 Pa. 22. By the weight of authority in Pennsylvania, claims for professional services are not of such character as can be sustained by books of original entry: Hale's Executors v. Ard's Executors, 48 Pa. 22; Meany v. Kleine, 3 W. N. C. 474. See, also, Fulton's Estate, 178 Pa. 78. Like rulings appear in the case of claims for professional services other than those rendered by attorneys: Fenn and Wife v. Early, 113 Pa. 265; Thorne v. Noel, 5 W. N. C. 566; Hopple v. Wilson, 10 W. N. C. 435; Sylvester v. Thompson, 11 W. N. C. 203."

In Freedman v. Mutual Life Insurance Company of New York, 342 Pa. 404, the Supreme Court of Pennsylvania said, at page 413:

"The rigid limitations upon the shop-book rule, whereby tradesmen were permitted to show the number and price of materials furnished and the value of services rendered, are self-explanatory. They were made necessary by the ever-present possibility of fraudulent, self-serving entries which might be relied upon to advance false claims against those who had no opportunity to inspect or correct the books. The reluctance of the courts to extend this rule to claims for professional services, the value of which might well be difficult of ascertainment and demonstration, is understandable. See Croushore's Est., 79 Pa. Superior Ct. 286, citing Fulton's Est., 178 Pa. 78."

In Haines' Estate, 10 Dist. R. 677, it was categorically said to have been settled by earlier decisions that a physician's list of memorandum is not admissible as a book of original entries. Judge Penrose said, at page 677:

"That a physician's visiting list or memorandum book is not admissible as a book of original entries has been settled, so far as this court is concerned, by the decisions in German's Estate, 16 Phila. 318, Kelley's

Estate, 5 District Reps. 263, Foreman's Estate, 7 District Reps. 214, etc.; but even if the claim in the present case, which is for medical services and medicines from 1870 to April, 1900, could thus be proved, it is evident that so much of it as accrued more than six years before its presentation as a legal demand is barred by the statute of limitations unless, within that time, the entire debt was clearly and distinctly recognized by the debtor as an existing obligation."

Counsel for the claimant contends that Deakyne Estate, 166 Pa. Superior Ct. 527; Keener v. Zartman, 144 Pa. 179; Engemann v. Colonial Trust Company, 378 Pa. 92, and Cameron Estate, 388 Pa. 25, all hold that claimant may testify on sufficient present facts to qualify the records for admissibility.

In Deakyne Estate, supra, the office time card of the architect was offered in evidence, and recorded, but the office records were identified and authenticated by the testimony of claimant's secretary. Judge Reno said, on page 529:

"Claimant's office time cards were properly considered business records, and although they were professional records they were admissible in evidence. McKeehan Est., 358 Pa. 548, 57 A. 2d 907. The Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, §1, 28 PS §91(a) defines the term 'business' as including 'every kind of business, *profession*, occupation, calling, or operation of institutions, whether carried on for profit or not.' (Emphasis supplied.) The court below, upon evidence which is sufficiently clear, expressly found 'the testimony concerning the manner of preparation and keeping of the original time cards is quite convincing as to their authenticity and probative value.' They fulfilled the requirements of the Act, supra, §2, 28 PS §91(b), and the court properly admitted them in evidence."

In Keener v. Zartman, supra, the paper books clearly show the substance of the assignment of error on which the court ruled that: "The first assignment is not sustained, as the witness, though a party, and interested, was only examined to prove book entries, and for that purpose he was competent." This ruling was made by the court on evidence identifying the handwriting of decedent. The witness was testifying to a present fact, to wit, that the entries of the account were in the handwriting of the witness' father. There was no question asked of the witness as to the time of entry, the method used in making the entry or in what manner the entry was made. This case does not justify the contention made for claimant.

It is true that in Engemann v. Colonial Trust Company, supra, Mr. Justice Bell said, on page 101:

"For example, 'book entries' made in books of original entry for goods sold and delivered, or for services rendered, and a physician's books of original entry are admissible against a deceased debtor: . . . [citing cases]."

However, the Engemann case involved the question of liability on a mortgage; it had nothing to do with the claim of a physician. The statement quoted is quite general and it is not subject to question if it assumes that competent testimony as to the identity and mode of preparation of such books is produced before the books are admitted in evidence. None of the cases cited by Mr. Justice Bell in the Engemann case, supra, holds that a physician's books of original entry are admissible as evidence, except where such books qualified for admission under the Uniform Business Records as Evidence Act.

The first of the cases cited by Mr. Justice Bell in the above excerpt from the Engemann case, Keener v. Zartman, supra, has already been discussed herein.

The second case cited in the said excerpt was Huffman Estate (No. 3), 349 Pa. 59.

In Huffman Estate (No. 3), supra, the record shows that a claimant offered a book account entered on numerous unconnected slips of paper, showing that decedent owed claimant $7,891.62 for merchandise. The auditor refused to accept the book account as evidential, after finding that the slips taken together were unintelligible and that in many instances the charges therein were not charges for original entries. Mr. Justice Hughes affirmed the findings of the auditor, saying, at page 61:

"The record discloses that the account kept by the claimant against his brother, Harvey Huffman, is such a confusion of slips of paper as to in no way accord with the orderly accounting system it was supposed to represent. Such a claim as here made should be guardedly received. 'The authorities hold that the books must show they are kept in the regular routine of business. That is one of the greatest safeguards of the reliability of such evidence. Thus alterations or interlineations will discredit the book, and unless explained will keep it from the jury: Churchman v. Smith, 6 Wh. 146; its general character may be impeached by showing irregularities in other accounts than the one in issue: Funk v. Ely et al., 45 Pa. 444; unconnected slips of paper showing charges are not admissible as a book of original entries: Thompson v. McKelvy, 13 S. & R. 126; entries, even in a regular book, are not evidence of the sale of an article not in the party's business: Shoemaker v. Kellog, 11 Pa. 310; Stuckslager v. Neel, 123 Pa. 53, and in Smith v. Lane, 12 S. & R. 80, it was said by Tilghman, C. J.: "It is a great objection to these books that they do not contain a daily entry of the general transactions at the mill" ': Fulton's Estate, 178 Pa. 78. The book account offered

in this case is subject to most of the foregoing objections."

This case does not sustain the contentions of claimant, Dr. Dimun. Fulton Estate, supra, next cited by Mr. Justice Bell in the Engemann case, did not consider whether professional services can be the subject of proof by book entry.

In McKeehan Estate, 358 Pa. 548, next referred to by Mr. Justice Bell, claimant, Dr. Record, presented the testimony of his secretary and office assistant, who was employed by the doctor for the entire period of the claim, and qualified his records by her testimony under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, sec. 1. This case does not sustain the contention made by claimant for the admission of his own testimony to qualify his books under the Uniform Business Records as Evidence Act.

In Staggers' Estate, 8 Pa. Superior Ct. 260, also cited by Mr. Justice Bell in the Engemann case, the claim of the doctor was allowed on his records. The auditor ruled that the doctor had no right to testify as to how he kept his books and the paper books show that the issue on the question was properly raised, but the Superior Court did not rule on the issue and never discussed the point that is raised here before this court. However, it may be said of this case that it is some authority for the contention of Dr. Dimun.

In the Engemann case, supra, Mr. Justice Bell also cites 1 Hunter, Pennsylvania Orphans' Court Commonplace Book, Evidence, §8(d), p. 420, which states the following:

"Books of original entry are admitted only to prove goods sold and labor performed; whether services by a physician may be so proved is an open question."

Fulton Estate, supra, Croushore's Estate, 79 Pa. Superior Ct. 286, and Daniels' Estate, 29 Dist. R. 131, are cited in support of this statement.

Then Hunter continues as follows:

"Weight of authority is that professional services may not be proved by books of original entry."

In support of this statement he cites Hall v. Smitheman, 26 Dist. R. 203; Gutekunst Estate, 46 Lanc. 353.

Hunter, Pennsylvania Orphans' Court Commonplace Book, Supplement 1939-1952, Evidence, §8(d), p. 144, says:

"Physician's books are admissible:
*Staggers's Est.*, 8 Pa. Super. 260
*McKeehan's Est.*, 358 Pa. 548
*Norton's Est.*, 17 Erie 135
*Walker's Est.*, 53 York 1
*Carr Est.*, 64 Montg. 175

"Not admissible:
*Claney's Est.*, 51 Pitts. 139."

Staggers' Estate and McKeehan Estate, above cited, have already been discussed in this opinion.

In Croushore's Estate, supra, claimant was Dr. Croushore, the son of decedent, whose *testimony was received without objection.* However, the court, on page 288, said:

". . . the question whether a physician's account book can be received as a book of original entries seems to be still in doubt in the State of Pennsylvania, Estate of A. C. Fulton, deceased, 178 Pa. 78. It was stated by Judge Sadler, now of the Supreme Court, in 26 Dist. Reports, page 203, in Hall v. Smitheman, 'By the weight of authority in Pennsylvaina, claims for professional services are not of such character as can be sustained by books of original entry."

In the case of Hoover v. Gehr, 62 Pa. 136, it was held that the book of a decedent showing on its face charges for *goods sold and delivered* is evidence on proof of decedent's handwriting alone. The court also stated that it was not necessary that there be evidence of the time and manner in which such entries were made.

This case has no application here either in support of the propriety of receiving Dr. Dimun's books as books of original entry in support of a claim for professional services rendered, or on the theory that the doctor's testimony was sufficient to qualify them under the Uniform Business Records as Evidence Act. The said act provides that in order to qualify such records under it, a qualified witness must testify as to the mode of preparation and that the records were made in the regular course of business.

In Gutekunst Estate, 46 Lanc. 353, on page 354, the court says:

"This claimant has no such record of original entry of calls made to all patients, including the decedent, wherein the entries were made at the time and itemized so that each entry is complete in itself, as was held to be competent evidence . . ."

One of the strongest cases in favor of Dr. Dimun's claim is Kready's Estate, 13 Dist. R. 501, where the court said:

"The only questions raised in this distribution are to the claim of Dr. Koser and the admissibility of the evidence submitted for its proof. The offer is a physician's book of original entries. The latest utterance on the subject from the Supreme Court is found in Fulton's Estate, 178 Pa. 78. J., Mitchell, there said: 'How far books of original entry may be received as evidence of services of a professional character has not been settled in this state.' He follows this with: 'The earlier cases are full of expressions that such entries are evidence at all only from necessity, and that the custom to which such necessity gave rise extended only to goods sold and labor performed, and that it was exceptional and dangerous in character and would not be extended.' But for this custom, born of necessity, professional labor might frequently go unrequited. Unquestionably the exclusion of such evi-

dence would often result in great injustice. It would be deplorable if necessity gave rise to a custom of professional witnesses accompanying doctors to the sick room. From the very nature of their employment, physicians more frequently than any other class of persons become the surviving parties to a contract, and as such, the statutory seal is put on their lips. If there is no way by which their bills against dead men's estates can be assured, it is not difficult to imagine how one, sick unto death, may be left to suffer for want of the physician's soothing potion. Exclude their books, and theirs frequently may be a labor of love. We are disposed to follow in a path now perceptibly worn, and decide, for the purposes of this court, that such as the book offered is admissible as evidence. This book is in proper form. It would be intelligible to a jury. Dates, names and charges are clearly set forth. It is no glossary, with signs, marks or Latin derivatives, so characteristic of the memoranda of many doctors. It is as easily understood as a merchant's book, and was kept in the regular routine of business.

"In Keener v. Zartman, 144 Pa. 179, the son of the administrator's intestate was held to be a competent witness to prove his father's book of original entries against the deceased debtor's estate. The book was admitted in Stagger's Estate, 8 Superior Court 260. In Haine's Estate, 10 District Reps. 677, Penrose, J., said: 'That a physician's visiting list or memorandum book is not admissible as a book of original entries has been settled, so far as this court is concerned, by the decision in German's Estate, 16 Phila. 318; Kelley's Estate, 5 District Reps. 263; Foreman Estate, 7 District Reps. 214, etc.' Nor would such a visiting list or memorandum as referred to in that case be admitted in this court as a book of original entries. Ashman, J., in German's Estate, used these words: 'The

rule of evidence which introduces a tradesman's books of original entries to prove his sales is permitted to override the principle that a party may not manufacture evidence for himself, on the ground of convenience.' In White's Estate, 32 Legal Intell. 430, the books were admitted, and Hanna, P. J., said: 'That claimant was incompetent as a witness in his own behalf, further than in support of his book entries by his suppletory oath, cannot be denied.' In Moffat's Estate, 1 W. N. C. 518, it was held that the visiting list of a physician is admissible to show the number of visits made to the patient.

"The book is prima facie evidence. It is the only evidence as to the number of visits. Notwithstanding the charges are therein recorded, they may be qualified by other evidence. Testimony as to the value of similar services rendered by other physicians of equal experience and ability will be taken into consideration. One offering to prove his own books throws himself open to any kind of a legal assault. His character, veracity and reputation are open to attack, as well as the character of his books. The claimant has charged $2.50 for each visit, together with a generally uniform charge of fifty cents for medicine. There are two charges of ten dollars each for 'Aspiration Abdominal' and 'Aspiration Paracentesis abdom.,' and ten dollars for a 'Post Mortem Aspiration.' "

However, the Supreme Court of Pennsylvaina in discussing the same problem involved in the Kready case, supra, in Freedman v. Mutual Life Insurance Company of New York, supra, in 1949, did not seem to think that the law of Pennsylvania had extended the shop book rule to claims for professional services.

In Norton's Estate, 17 Erie 135, Judge Waite held:

"It is urged that even if these slips do constitute books of original entry they are not admissible to prove charges for professional services such as that of a

physician. This precise question has not been passed upon by our Appellate Courts. However, the lower courts generally admit book accounts of calls made by a physician if the entries were made at the time and itemized, see

German's Estate, 16 Philadelphia 318 and their admission has been affirmed on appeal.

Stagger's Estate, 8 Superior Court 260

O'Bold's Estate, 221 Pa. 145

Such entries alone, however, are not conclusive of the value of the services. See

Randolph v. Pfromer, 2 Philadelphia 17.

In the instant case some of the services were rendered decedent at the claimant's office and others in decedent's home. The entries were made by the bookkeeper or clerk at the time of the services rendered and medicines delivered and she further states that she had personal knowledge of the calls made in decedent's home as well as at the doctor's office and that the charges made were the usual and customary charges for such medicines and services. Her testimony in this regard is corroborated by that of the nurse."

In Norton's Estate, supra, the testimony was offered by the bookkeeper and nurse. We do not consider the case to be authority in the case before the court, either as to the disposition that the sheets as offered constitute books of original entry or that the doctor's testimony as to the act that he performed in keeping his books during the life of decedent was admissible to qualify the sheets under the Uniform Business Records as Evidence Act.

In Walker's Estate, 53 York 1, President Judge Gross held that the secretary of Dr. Mackenzie was a competent witness to testify that the doctor's records were kept in her own handwriting and that the entries were made in the due course of employment from the information that she received from her employer, the

surgeon. He also held that the said records were admissible as books of original entry.

There is no discussion of the competency of the doctor's testimony in Walker's Estate, supra. However, President Judge Gross does state the following, on page 3:

"It would seem that the Supreme Court has not definitely said or settled how far books of original entry may be received, as evidence of services of a professional character. But the Superior Court's judgment in Stagger's Estate, 8 Superior Court 260, assumes the admissibleness of the physician's book. See also Croushore's Est., 79 Superior Ct. 286. Referring particularly to the books of physicians, Mitchell, J., remarked in 1896, 'How far books of original entry may be received as evidence of services of a professional character has not been settled in this state.' After quoting from Hale's Exec. v. Ard's Exec., 48 Pa. 22, he adds, 'How far, if at all, subsequent practice has enlarged the strict limits thus laid down, we do not need to consider.' Judges in the inferior courts have occasionally expressed doubt of the admissibility of the physician's book entries, e.g. Hawkins, J., Finch's Estate, 49 P.L.J. 170; Penrose, J., Foreman's Estate, 7 Dist. 214. A considerable number of judges, however, have conceded that a physician's book would be competent in support of his claim, if properly kept: Baker's Estate, 11 North. 9; Kreedy's Estate, 21 Lancaster L. R. 13; Pengaman v. Lewis, 47 P.L.J. 369; German's Estate, 16 Phila. 318; Kelley's Estate, 5 Dist. 263; Moffet's Estate, 11 Phila. 79; Wilson's Estate, 29 Lancaster L. R. 45. The fact that a card index system has been used in this case, does not seem to make the exhibit objectionable."

[At this point the court discusses Carr Estate, 64 Montg. 175.] . . .

In the case now before this court, claimant attempted to qualify the records by the testimony of his wife, Mrs. Michael F. Dimun. The testimony of the wife is incompetent. Where a claimant is barred from testifying by the Evidence Act of May 23, 1887, P. L. 158, sec 5(e), his wife is likewise barred: Bitner v. Boone, 128 Pa. 567, 569. We have discussed previously the statement in Mrs. Nancy Dempsey's testimony that she would identify the entries made and that those made during the time she was employed by the doctor were made in the regular course of business, within a reasonable time from the time the calls were made by Dr. Dimun on decedent.

The court is of the opinion that the records made while Mrs. Dempsey was employed by Dr. Dimun and the method and time of their preparation were such as to justify the admission of this portion of the doctor's records.

The fourth and last question raised in this case is: Was there sufficient testimony to justify the admission in evidence of that part of the doctor's records prepared before Mrs. Dempsey took charge of such records?

The court is of the opinion that these records do not fall within the exception to the hearsay rule as to book entries made in the regular course of business and that they are not admissible under the Uniform Business Records as Evidence Act. In the opinion of the auditing judge the records of the doctor may not be admitted under the so-called "shop book rule" exception to the hearsay rule, since the weight of Pennsylvania authority restricts the "shop book rule" to goods sold and labor performed and does not extend to proof of professional services by the books of account of claimant. Furthermore, the doctor's records for the period preceding the time when Mrs. Dempsey took charge of the records are not admissible under

the Uniform Business Records as Evidence Act, because they are not supported by the testimony required to make them admissible under that act. To support these records it was necessary to show by the custodian or other qualified witness how the records were prepared and that they were prepared in the regular course of business at or near the time the services were rendered. Section 2 of the Uniform Business Records as Evidence Act reads as follows:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness *testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.*" (Italics supplied.)

Both Dr. Dimun and his wife were incompetent to testify as to these matters which occurred prior to the death of Mr. Stoneroad because their testimony was objected to under the provisions of the so-called Dead Man's Act of 1887, section 5(e). Mrs. Dempsey had no knowledge concerning records prepared before she was employed by Dr. Dimun, so there was no testimony as to how the records rejected by the court were prepared nor as to the time when they were prepared. In the absence of such testimony the rejected records did not qualify for admission under the provisions of the Uniform Business Records as Evidence Act, above quoted. See Henderson v. Zubik, 390 Pa. 521, 524. Accordingly, the fourth question must be answered in the negative; there was not sufficient testimony to justify the admission in evidence of that part of the doctor's records prepared before Mrs. Dempsey took charge of such records.

The court is of the opinion that Dr. Michael F. Dimun proved his claim only for services rendered during the period from December 1, 1956 until November 1, 1957 . . .