Kaminski Brothers, Inc. *v.* Grassi, Appellant et ux.

Submitted March 24, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Francis P. Burns,* for appellant.

*Joseph J. Ustynoski, Conrad A. Falvello, Anthony C. Falvello,* and *Falvello, Ustynoski, Giuliani & Bernstein,* for appellee.

Opinion by Van der Voort, J., December 1, 1975:

On March 20, 1969, plaintiff Kaminski Brothers, Inc. instituted an action in ejectment against defendant John Grassi and his wife. A default judgment was entered in favor of plaintiff on September 23, 1969, but the judgment was opened by the lower court on October 4, 1970, with defendant raising the defense of adverse possession. A jury returned a verdict for defendant on April 28, 1971, but the trial judge granted plaintiff's motion for judgment n.o.v. Pursuant to defendant's post-trial motions, the Luzerne County Court en banc rendered a 3-2 opinion upholding the grant of judgment n.o.v. for plaintiff, with the trial judge who originally granted plaintiff's motion joining in the dissenting opinion. Appeal was taken to our Court by John Grassi from the judgment n.o.v. for plaintiff.

Appellant's argument is basically that there was sufficient evidence to support his claim of adverse possession, and that the lower court was therefore in error in granting judgment n.o.v. for plaintiff. It has long been the law in Pennsylvania that one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years. *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 594, 66 A.2d 828 (1949). The adverse possessor " 'must intend to hold the land for himself, and that intention must be made manifest by his acts . . . . No particular act, or series of acts, is necessary to demonstrate an intention to claim ownership. Such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner.' " *Robin v. Brown et ux.,* 308 Pa. 123, 126, 162 A. 161 (1932). Although the burden is on appellant John Grassi to prove title by adverse possession, we must review the record giving the verdict winner the benefit of every inference

of fact. In *Pfeiffer v. Kraske*, 139 Pa. Superior Ct. 92, 97, 11 A.2d 555, 556 (1939), a jury found for defendant, but the lower court granted plaintiff's motion for judgment n.o.v. On appeal to our Court, we stated: "the testimony should not only be read in the light most advantageous to the successful party, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issue involved which may reasonably be deduced from the evidence: *Kissinger et al. v. Pittsburgh Railways Co.*, 119 Pa. Superior Ct. 110, 180 A. 137." See also *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). Viewing the evidence in the light most favorable to the verdict winner, we find that there is sufficient evidence in the record to support a conclusion by the jury that appellant John Grassi obtained title to the property in question by adverse possession.

The property in question is approximately 1/3 of an acre of ground adjacent to a double house, half of which house is owned by appellant John Grassi. (The house itself and the land on which it stands are not involved in the dispute). Appellant testified that he was born on the property in 1919, but that the family moved to Hughestown when appellant was eight years old. In 1939, appellant began working on the house and yard, preparatory to seeking a tenant for the place. From 1939 to 1941, the property was rented to one Joseph Sarte; from 1941 to 1943, the property was occupied by Joseph Kozak (half-brother to the owners of plaintiff corporation), who paid no rent; from 1944 to 1948, the property was rented to Everisto Grassi, a cousin of appellant, who did pay rent to appellant. While Everisto Grassi was occupying the premises, appellant's home in Hughestown burned down, and appellant decided to move to the property in question. Appellant then occupied the premises with his wife from early 1949 continuously to the present.

Appellant testified that he painted the house in 1939, and also did some work on the outside of the house before renting it out. During the period 1939 to 1949, "[w]henever repairs or maintenance came up, I always went up to the property on the weekends and either took care of it or seen [sic] to it that it was taken care of." Appellant also testified that the tenants had the use of the land around the house, including some sheds, a garage, and fruit trees. Dominick A. Lussi, owner of the other half of the double house, testified that he observed tenants living in the Grassi house before 1949, and that he always saw John Grassi fixing up the house and property: "It was like a dump around there and he fixed it all up." Mr. Lussi testified that he saw appellant remodel the house, clean up the shrubberies, clean up the yard, and build a patio and fireplace. Another witness called by appellant, Helen B. Gammaitoni, lived across the street from the Grassi home since June of 1944, and testified that John Grassi moved to the property in 1949. The witness testified that during the period 1949-1971, she observed the Grassis landscaping the grounds and making improvements to the house.

Appellant testified himself regarding various improvements he made to the house and yard since taking possession in 1939. When asked on direct examination about his connection with the property during the years 1939 to 1949, appellant replied that he had made repairs and had done general maintenance work on weekends, even during the several months he was living in New Jersey. Appellant stated that when he and his wife moved to the property in early 1949, they did extensive work to both the house and the grounds:

"Q Now, what part of that land and house did you use, all of it?

A I used all of it. It was the same land that was used by my dad.

Q You moved into the house?

A  The house, yes.

Q  And the house is on the land in question?

A  Yes.

Q  Did you use the adjoining land?

A  Adjoining to mine?

Q  Adjoining the house?

A  Yes, I did.

Q  Now, tell us what your family did to this land?

A  Well, we renovated the inside and we put—I put steam heat in and panelled it, painted the outside, put new windows in, put chimneys in, you know and constantly maintained and I am still repairing it.

Q  Now, how about the land outside?

A  Well, we landscaped—I landscaped it, changed a lot of the open sewers that they used to have in the ditches, put a septic system in and landscaped the grounds around the house.

Q  Did you cut the grass?

A  Yes and planted extra seed there.

Q  Were the bushes and shrubbery maintained?

A  We maintained them and planted additional flowers.

Q  How about the back of the property, did you have cookouts?

A  Yes, I have a fireplace built back there, a patio and a regular little grove.

Q  Was there a basketball hoop in the back?

A  Yes, a basketball hoop and a board there.

Q  How old are your boys now?

A  My oldest boy is 26 and the younger one is 22.

Q  And in what condition is the basket now?

A  Well, it should be replaced about now. It has been there a long time.

Q  That hoop was up in the yard for the kids?

A  It's been there a long time, yes.

Q  Did you shovel any snow from 1949 on?

A  Yeah, every year.

Q  Pardon?

A  Every year.

Q  Is there a road in front of your place now?

A  Yes, there's a paved road in front, but there's a drive right directly in front of our place that we put in ourselves."

From the preceding evidence, the jury could justifiably have concluded that appellant was in possession of the property from 1944 to late 1948 (during which time the premises were occupied by Everisto Grassi as tenant of John Grassi), and that appellant personally occupied the premises from early 1949 to March of 1969 (when the action in ejectment was brought).

Appellee contends that the continuity of appellant's possession of the property was broken by a period of several months' unoccupancy in late 1948 or early 1949. We disagree. "In order to break the continuity of possession, the vacancy must not be merely accidental, or such as is incident to a change of tenants, or for want of a tenant; but if there be an abandonment for any time, or if one disconnected with the previous holder take the possession, the continuity is broken." *Thompson v. Kauffelt,* 110 Pa. 209, 217, 1 A. 267, 270 (1885). In the case before us, there was no abandonment of the premises during late 1948 or early 1949, but merely a temporary vacancy of several months, during which time appellant painted the house and did other repair work on the premises preparatory to moving in. The vacancy was hardly sufficient to break the continuity of possession; the jury was clearly justified in finding that appellant was in possession of the premises from 1944 continuously through 1969—a period of well over twenty-one years.

Appellee further contends that John Grassi failed to establish the boundaries of the land adversely possessed. The dimensions of the area in question—the yard adjoining the Grassi house—were stipulated to by counsel. When the various witnesses testified concerning the land adjoining the house, it was clear that they were talking

about this area, and there was therefore no need for appellant to further prove the boundaries of the yard. The jury could reasonably have believed that appellant was using the entire area in question for a period of twenty-one years or more.

Since we find that the record contains evidence from which the jury could have concluded that appellant John Grassi "unfurl[ed] his flag on the land, and [kept] it flying" for the required twenty-one year period, *Robin v. Brown et ux., supra,* we reverse the action of the lower court and order that the verdict in favor of appellant John Grassi be reinstated.

JACOBS, J., dissents.